A93A0456. FREEMAN et al. v. PIEDMONT HOSPITAL et al.
(434 SE2d 764)

COOPER, Judge.

Appellees are Piedmont Hospital; Hulett C. Sumlin, the hospital administrator; and Dr. Walter H. Butler, the chairman of the hospital's Department of Anesthesiology and a member of its Credentials Committee. Appellants, an anesthesiologist ("Dr. Freeman") and his professional corporation, brought this action against appellees to recover damages stemming from a letter sent by the hospital administrator to the Composite State Board of Medical Examiners ("the Board") after Dr. Freeman voluntarily resigned from the medical staff of the hospital. On appeal, appellants challenge a trial court order granting appellees' motion for summary judgment and denying appellants' motion to compel discovery.

Because appellants are the respondents on a motion for summary judgment, we view the evidence in a light most favorable to them and give them the benefit of all favorable inferences that may be drawn from the evidence. See *Eiberger v. West*, 247 Ga. 767 (1a) (281 SE2d 148) (1981). Drs. Butler and Freeman, both members of the professional association which provides all anesthesia services at Piedmont Hospital, disagreed on many personal and professional matters and had a hostile relationship for a number of years prior to the incident at issue in this case. In June 1989, Dr. Freeman suffered a large civil judgment against him in Florida in an unrelated civil action arising out of the purchase of a boat. At a meeting of the professional association on June 14, 1989, Dr. Butler and several others expressed concern over the ramifications of the judgment against Dr. Freeman for the professional association. Although the association's attorney assured them there could be no ramifications for the association, Dr. Butler said that he intended to see that Dr. Freeman never practice at Piedmont Hospital again. One doctor stated by affidavit that Dr. Butler showed him Dr. Freeman's anesthesiology records for the week of June 12, 1989, and told him he thought they showed Dr. Freeman was "impaired." When the affiant doctor disagreed, Dr. Butler replied, "Well, this is how we are going to get him." Dr. Freeman was 55, and had been thinking of moving to Savannah and cutting back his working hours. Moreover, Dr. Freeman says, he was simply tired of fighting with Dr. Butler and watching him make a mess of the professional association. Thus, after a confrontation with Dr. Butler on June 16, 1989, he voluntarily resigned from the association and the medical staff of the hospital.

On July 5, 1989, Sumlin wrote a letter to the Board. After informing the Board of Dr. Freeman's voluntary resignation as required pursuant to OCGA § 31-7-8 (a), the letter went on to state: "Dr. Freeman's resignation was apparently, in part, due to action taken by the Chairman of his department, Dr. Walter Butler (Chairman, Department of Anesthesiology) and Dr. Frank L. Wilson, Chairman of the Department of Surgery. Dr. Butler and Dr. Wilson reported to the Credentials Committee concerns of the staff nurses and recovery room nurses regarding Dr. Freeman's performance of his duties during several days following June 12, 1989. Dr. Freeman notified the Board of Directors of his professional association of his intent to resign prior to any formal action being taken by the Credentials Committee." (Indentation omitted.) Dr. Freeman had applied to join the staff at Candler Hospital in Savannah, but his application for staff membership and privileges was denied in September 1989 "in view of the present controversy at Piedmont Hospital and the impending investigation by the Composite State Board of Medical Examiners."

It is undisputed that Dr. Butler and Dr. Wilson never reported

the "concerns" of nurses to the Credentials Committee as related in the letter to the Board; Dr. Butler stated in his deposition that although they intended to do so, Dr. Freeman resigned before any such report was made. Moreover, while Dr. Freeman's letter of resignation states that he was aware that his Piedmont Hospital privileges might be suspended if he did not resign, it indicates an underlying assumption that any adverse action that might be taken by the Credentials Committee would be based on the unrelated legal judgment against him rather than any allegations of "concerns" about substandard medical practice.

Two nurses deposed that Dr. Freeman's reporting and record-keeping practices were often lax, but that other anesthesiologists may have been similarly lax in their reporting practices and that Dr. Freeman's record keeping was not noticeably worse the week of June 12, 1989. We cannot know whether these were the "concerns" referred to in the letter to the Board because the nurses' communications with Dr. Butler and Dr. Butler's communications with Sumlin were ruled privileged under OCGA § 31-7-133 (a) by the trial court.

1. Appellants first argue that the trial court erred in granting summary judgment for all three appellees on appellants' causes of action based on defamation and intentional interference with business relations.[1] A hospital administrator is required to report to the Board all resignations from practice in his institution, OCGA § 31-7-8 (a), and if a voluntary resignation was the result of action initiated by the institution, the report shall contain the circumstances involved therein, OCGA § 31-7-8 (c). And "[t]here shall be no civil or criminal liability on the part of, and no cause of action for damages shall arise against, any hospital administrator . . . who in good faith complies with this Code section." OCGA § 31-7-8 (d). Even viewing the record favorably to appellants, there is no evidence of bad faith on the part of Sumlin. Accordingly summary judgment was properly granted for Sumlin based on the immunity from liability provided by OCGA § 31-7-8 (d). It follows that summary judgment for Piedmont Hospital was also proper, as appellants' sole theory of liability against the hospital was its responsibility for the conduct of Sumlin while he was acting within the scope of his duties as hospital administrator.

Additionally, summary judgment for Dr. Butler was proper with respect to slander. While there is evidence from which it may be inferred that Dr. Butler falsely stated to Sumlin that Dr. Freeman resigned in part because he feared a Credentials Committee investigation into "concerns" of nurses regarding his performance of his duties,

---

[1] Although appellants alleged several other causes of action below, their other claims were voluntarily dismissed below or abandoned on appeal.

such a statement to another who, by reason of his organizational position, has the duty or authority to receive the information does not constitute the "publication" necessary to establish actionable slander. See *Kurtz v. Williams*, 188 Ga. App. 14 (3) (371 SE2d 878) (1988).

However, appellants' cause of action against Dr. Butler for intentional interference with business relations cannot be summarily decided. For purposes of summary judgment, Dr. Butler is not entitled to the immunity from liability for peer review activities provided by OCGA §§ 31-7-132 (a) and 31-7-141 because there is evidence in the record from which a jury could infer that his conduct was motivated by malice. To establish a cause of action for tortious interference with business relations, the plaintiff must show that the defendant " '(1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury.' . . . [Cit.]" *Arford v. Blalock*, 199 Ga. App. 434 (13) (405 SE2d 698) (1991), aff'd sub nom. *Wilensky v. Blalock*, 262 Ga. 95 (414 SE2d 1) (1992). There is evidence supporting the inference that Dr. Butler communicated to Sumlin false information regarding the reasons for Dr. Freeman's resignation, and Dr. Butler cannot rely on any claim of privilege on motion for summary judgment because there is evidence from which a jury could infer that Dr. Butler used his positional privilege "as a cloak for venting private malice." OCGA § 51-5-9; see also OCGA §§ 31-7-132 (a); 31-7-141. Although Dr. Butler stated that he did not know exactly what would happen with this information after he communicated it to Sumlin, a jury could infer that he knew the communication would make it more difficult if not impossible for Dr. Freeman to secure staff membership and privileges in another hospital and intended this result. The communication in fact did result in the denial of staff membership and privileges at Candler Hospital in Savannah. Moreover, contrary to appellees' assertions that appellants were not damaged because the Board's investigation into the matter was eventually dropped and Dr. Freeman eventually joined the staff of another hospital, the record contains evidence of financial harm to appellants. We therefore conclude that the trial court erred in granting summary judgment for Dr. Butler on appellants' claim for intentional interference with business relations. See *Integrated Micro Systems v. NEC Home Electronics (USA)*, 174 Ga. App. 197 (3) (329 SE2d 554) (1985).

2. Appellants also contend that the trial court erred in concluding that testimony regarding which nurses voiced what "concerns" and what Dr. Butler actually communicated to Sumlin is privileged pursuant to OCGA § 31-7-133 (a). This Code section provides that "proceedings and records" of a peer review organization shall be held in

confidence and shall not be subject to discovery. Appellants argue that the privilege applies only to formal hearings or meetings, and there were no formal hearings or meetings in this case. However, the purpose of the privilege is to foster the medical staff candor necessary for effective peer review, *Eubanks v. Ferrier*, 245 Ga. 763 (3) (267 SE2d 230) (1980), and this purpose would not be served if the privilege were limited to only what occurred in formal hearings or meetings and did not apply to medical staff comments to committee members or other intraorganizational communications leading up to the initiation of a formal hearing or meeting. Moreover, appellants' argument was implicitly rejected in *Emory Clinic v. Houston*, 258 Ga. 434 (369 SE2d 913) (1988), in which the Supreme Court reversed a decision of this court adopting appellants' position. See *Emory Univ. v. Houston*, 185 Ga. App. 289 (5) (364 SE2d 70) (1987). Accordingly, the trial court properly ruled that the privilege applies to all information learned through communications that "arose out of" an individual's participation on a peer review committee, see *Eubanks*, 245 Ga. at 768, even if the communication occurs prior to the initiation of formal proceedings.

*Judgment affirmed in part and reversed in part. McMurray, P. J., Birdsong, P. J., Andrews and Blackburn, JJ., concur. Pope, C. J., Beasley, P. J., and Smith, J., concur in part and dissent in part. Johnson, J., not participating.*

BEASLEY, Presiding Judge, concurring in part and dissenting in part.

1. I agree with that portion of Division 1 which holds that Dr. Butler was not entitled to summary judgment on the record thus far developed with respect to plaintiffs' claim of intentional interference with business relations. I respectfully dissent as to the remainder of the opinion.

2. Plaintiffs enumerate as error the denial of their motion to compel discovery. They sought certain information by interrogatories to each of the defendants plus questions at the depositions of two nurses, which they were precluded from obtaining. It related to the "concerns of . . . nurses" which was referenced in the letter of hospital administrator Sumlin reporting the resignation of Dr. Freeman to the State Board. It is undisputed that these unspecified "concerns" of unidentified persons, which were the heart of the negative implications about Dr. Freeman's professional performance conveyed to the State Board, were never brought to the attention of the hospital's Credentials Committee or any other review organization or medical review committee. Thus, the information sought is not subject to the confidentiality privilege of either OCGA § 31-7-133 (a) or OCGA § 31-7-143. The first section protects "the proceedings and records of

a review organization." The second section protects "[t]he proceedings and records of medical review committees." Even when there are proceedings of either type group,[2] the two statutes provide that information available from original sources is not immune.

Here plaintiffs sought the sources and subject matter of the damaging statement in the hospital administrator's letter, which letter erroneously relates that the information was reported to the Credentials Committee. There is nothing in the law which shields these facts from disclosure to the plaintiffs, who are affected by them. *Cobb County Kennestone Hosp. Auth. v. Martin*, 208 Ga. App. 326 (430 SE2d 604) (1993).

*Eubanks v. Ferrier*, 245 Ga. 763 (267 SE2d 230) (1980), does not preclude discovery of the information sought by plaintiffs' interrogatories and deposition questions. It upheld the nondiscoverability of records and proceedings of hospital medical review committees. It also protected those who served on the committee from questioning about any matter that arose out of their service on the committee. That situation does not obtain here.

*Emory Clinic v. Houston*, supra, fn. 1, also does not apply, because it merely affirms that there is to be no discovery relative to medical or peer review proceedings.

The denial of discovery was error. That being so, summary judgment should also be reversed, to await the development of evidence which can affect the provability of plaintiffs' claims.

I am authorized to state that Chief Judge Pope and Judge Smith join in this opinion.

DECIDED JULY 15, 1993 —
RECONSIDERATIONS DENIED JULY 30, 1993 —

*Jerry B. Hatcher*, for appellants.
*Long, Weinberg, Ansley & Wheeler, Sidney F. Wheeler, M. B. Satcher III*, for appellees.

---

[2] See an explanation of the distinction in *Emory Clinic v. Houston*, 258 Ga. 434, 435 (1), fn.1 (369 SE2d 913) (1988).