A08A1172. SAYE v. DELOITTE & TOUCHE, LLP.
(670 SE2d 818)

BERNES, Judge.

Catherine C. Saye sued Deloitte & Touche, LLP for libel, slander, and tortious interference with business and employment relations based upon statements that a partner of Deloitte made to her employer. The trial court dismissed her claims after concluding that the alleged defamatory statements were inactionable privileged communications that had not been published. Because we find that the privilege protecting Deloitte remains dependent upon a finding that the statements were made without malice and that the publication element of the defamation claims was met, we reverse.

We review de novo the trial court's ruling on a motion to dismiss. *Lyon v. Schramm*, 291 Ga. App. 48, 49 (661 SE2d 178) (2008).

> Our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts.

(Citation and punctuation omitted.) Id.

Saye has alleged that, in December 2005, she was hired by Wayne Farms, LLC, a subsidiary of ContiGroup Companies, Inc., as its corporate controller. She reported directly to the company's chief

financial officer. ContiGroup employed Deloitte for its auditing needs.

In or around March 2006,[1] a Deloitte partner contacted the chief financial officer of ContiGroup and advised him that his company should terminate Saye based upon alleged information that Deloitte possessed but was unable to share with ContiGroup due to client confidentiality. ContiGroup hired an independent company to conduct a full investigation of Saye, following which a determination was made to retain her services and seek a retraction from Deloitte.

In July 2006, a deputy managing partner of Deloitte sent a letter to the president and CEO of ContiGroup that stated as follows:

> Based upon information in Deloitte & Touche LLP's possession, including but not limited to the [independent report] . . . and confidential information obtained as a result of services to another client, Deloitte & Touche LLP . . . is not willing to rely on the representations of Catherine C. Saye for purpose of the audits of the financial statements of Wayne Farms LLC and ContiGroup . . . and Deloitte & Touche LLP will not be in a position to conduct audits in accordance with generally accepted auditing standards of the financial statements of both Wayne Farms LLC and ContiGroup if Catherine C. Saye is in a financial reporting or accounting role, or otherwise serves as an officer of Wayne [F]arms LLC or ContiGroup.

Saye alleges that the oral and written statements made by Deloitte to ContiGroup were made with malice and without any factual basis and, as a result, she was terminated from her position with Wayne Farms. Based upon these communications, she filed suit against Deloitte for defamation by slander, defamation by libel, and tortious interference with business and employment relations and sought punitive damages and attorney fees.

The trial court granted Deloitte's motion to dismiss on the grounds that Deloitte's communications were privileged and had not been published, and, therefore, could not support the claims for defamation and tortious interference with business or employment relations.

1. *Defamation Claims*. A viable defamation claim under Georgia law consists of (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3)

---

[1] Although the complaint asserts that this communication transpired in March 2003, the context of remaining allegations make clear that this was a typographical error.

fault by the defendant amounting at least to negligence; and (4) special harm or the "actionability of the statement irrespective of special harm." (Punctuation and footnote omitted.) *Mathis v. Cannon*, 276 Ga. 16, 20-21 (2) (573 SE2d 376) (2002). See OCGA §§ 51-5-1 (a); 51-5-4 (a). Publication of the statement is imperative and, without it, the defamation claim fails. See OCGA § 51-5-1 (b) ("The publication of the libelous matter is essential to recovery."); *Kurtz v. Williams*, 188 Ga. App. 14, 15 (3) (371 SE2d 878) (1988) ("Publication is indispensable to recover for slander.") (citation and punctuation omitted). Guided by these principles, we now separately address the distinct issues of privilege and publication.

(a) *Privilege*. Deloitte emphasizes, and we fully agree, that public policy demands the fostering of an environment where the exchange of information between an accountant and its audit client is unrestrained and freely transmitted without fear of disclosure. See *Gearhart v. Etheridge*, 232 Ga. 638, 639-640 (208 SE2d 460) (1974); *Roberts v. Chaple*, 187 Ga. App. 123, 124 (369 SE2d 482) (1988). Indeed, the Georgia legislature created a statutory privilege in order to promote this unfettered exchange. OCGA § 43-3-32 (b);[2] *Crews v. Roger Wahl, C.P.A., P.C.*, 238 Ga. App. 892, 897 (2) (520 SE2d 727) (1999). "Without an atmosphere of confidentiality[,] the client might withhold facts he considers unfavorable to this situation thus rendering the accountant powerless to adequately perform the services he renders." *Gearhart*, 232 Ga. at 640. See *Roberts*, 187 Ga. App. at 124.

This protection also extends to communications made from an accountant to its audit client while engaged in a professional relationship. See OCGA § 43-3-32 (b). An accountant must be at liberty to express its concerns and to offer advice to its audit client in the discharge of its duties in order to diligently protect and promote its client's interests. See generally id.; *Gearhart*, 232 Ga. at 640; *Roberts*, 187 Ga. App. at 124.

Thus, the statements at issue here, made in the context of the auditing relationship, were privileged. But Georgia law recognizes two types of privilege — absolute and conditional. See generally OCGA §§ 51-5-7; 51-5-8; 51-5-9.

---

[2] OCGA § 43-3-32 (b) provides, in pertinent part:
All communications between a certified public accountant . . . or employee of such certified public accountant . . . acting in the scope of such employment and the person for whom such certified public accountant . . . or employee shall have made any audit or other investigation in a professional capacity and all information obtained by a certified public accountant . . . or such an employee in his professional capacity concerning the business and affairs of clients shall be deemed privileged communications in all courts or in any other proceedings whatsoever.

> From motives of public policy[,] the law recognizes certain communications and publications as privileged either absolutely, entirely freeing the party from any liability to the person injured by the words or the publication, or conditionally, that is, the words shall be spoken in good faith, upon a proper occasion. When the privilege is absolute, the motive of the publication is immaterial. When the privilege is conditional[,] actual malice will bring about liability. With an absolute privilege the question of malice is not open; all inquiry into good faith is closed.

(Punctuation and footnotes omitted.) *O'Neal v. Home Town Bank &c.*, 237 Ga. App. 325, 332 (8) (514 SE2d 669) (1999). Thus, communications which are afforded an absolute privilege cannot form the basis of a defamation action, regardless of the falsity of the statements or the speaker's malicious intent; conditionally privileged statements, on the other hand, are actionable upon a showing of malice. See OCGA §§ 51-5-7; 51-5-8; 51-5-9.

Deloitte contends that public policy requires that the communications exchanged between an accountant and its audit client be absolutely privileged. We do not agree.

The doctrine of absolute privilege extends to "[a]ll charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought." OCGA § 51-5-8. Although this privilege has not been strictly limited to "pleadings" as defined under OCGA § 9-11-7 (a), it is restricted to "narrow and well-defined limits," which have been summarized as "statements made in official court documents and acts of legal process." (Citations, punctuation and footnotes omitted.) *Simmons v. Futral*, 262 Ga. App. 838, 839 (586 SE2d 732) (2003). See *Davis v. Shavers*, 269 Ga. 75, 76 (495 SE2d 23) (1998); *Fedderwitz v. Lamb*, 195 Ga. 691, 696 (25 SE2d 414) (1943); *O'Neal*, 237 Ga. App. at 332 (8). Absolute privilege is based upon a public policy determination that the importance of one's ability to be free from restraint when engaged in legal processes outweighs a defamed party's right to seek legal redress.

> The wisdom of so broad a privilege lies in the recognition that, without it, every complaint filed could generate a counterclaim for defamation. The privilege is intended for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a

criminal prosecution or an action for the recovery of damages.

(Citation and punctuation omitted.) *Stewart v. Walton*, 254 Ga. 81, 82 (2) (326 SE2d 738) (1985). See *Fedderwitz*, 195 Ga. at 696; *Simmons*, 262 Ga. App. at 839.

With this limited exception, Georgia law provides that "[i]n every case of privileged communications, if the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action." OCGA § 51-5-9. "The cases speak of the privilege's forfeiture when one acts wilfully, corruptly or maliciously." (Citations and punctuation omitted.) *Cohen v. Hartlage*, 179 Ga. App. 847, 849 (348 SE2d 331) (1986).

Communications between an accountant and its audit client clearly cannot be characterized as being made in official court documents or within acts of legal process, and thus fall within the ambit of conditionally privileged communications. See OCGA § 51-5-9; *Davis*, 269 Ga. at 76 (declining to extend the absolute privilege to statements made in a recall application against a city official, holding instead that the statements are conditionally privileged); *Simmons*, 262 Ga. App. at 839 (holding that a surveyor's lien is conditionally privileged until it becomes attached to a lawsuit and verified notice of the suit is filed); *O'Neal*, 237 Ga. App. at 332 (holding that a conditional, as opposed to an absolute, privilege protects publications which contain the contents of official court documents but are made outside the judicial process). Our conclusion that the communications at issue are conditionally privileged is also consistent with OCGA § 51-5-7, which affords a conditional privilege to statements made in the performance of public or legal duties, as well as statements made to protect a speaker's interest in a matter in which it is concerned. See OCGA §§ 43-3-32 (b), 51-5-7 (1), (2), (3); *Gearhart*, 232 Ga. at 640; *Roberts*, 187 Ga. App. at 124. We note that other jurisdictions have reached the same result. See generally *Abella v. Barringer Resources*, 615 A2d 288, 293-294 (II) (N.J. Super. Ct. Ch. Div. 1992); *Ross v. Gallant, Farrow & Co.*, 551 P2d 79, 81 (Ariz. App. 1976).

Consequently, the determination of whether Deloitte's statements were privileged, and thus immune from liability, turns on the issue of malice. OCGA § 51-5-9. Construing, as we must, the complaint in the light most favorable to Saye, she has alleged that Deloitte acted maliciously, without privilege, and with an intent to injure her by inducing ContiGroup and Wayne Farms to terminate her employment, causing her to suffer economic and emotional damage. At this stage in the proceedings, Saye has sufficiently

alleged malice and, in turn, a question remains as to whether the privilege has been overcome. See, e.g., *Scouten v. Amerisave Mtg. Corp.*, 283 Ga. 72, 73-74 (2) (656 SE2d 820) (2008); *Fedderwitz*, 195 Ga. 691. We note, however, that the burden is ultimately on Saye to furnish proof of malice, and "[c]onclusory allegations . . . of conspiracy, malice, and defamation are insufficient — in the absence of substantiating fact or circumstances — to raise a material issue for trial." (Citations and punctuation omitted.) *Sherwood v. Boshears*, 157 Ga. App. 542, 544 (278 SE2d 124) (1981).

(b) *Publication.* Under defamation law, whether a statement is privileged is a separate and distinct legal question from whether the statement was published. *Elder v. Cardoso*, 205 Ga. App. 144, 146-147 (2) (421 SE2d 753) (1992) ("[T]he existence of a conditional privilege is not the legal equivalent of the non-existence of actionable publication."). We must therefore further analyze the relationship between Deloitte and its audit client as it pertains to the determination of whether the statements were published.

Generally, publication is achieved by communicating a defamatory statement to anyone other than the person being defamed. An exception to that broad definition has evolved over time, however, and it now excludes communications that are "intracorporate, or between members of unincorporated groups or associations, and . . . heard by one who, because of his/her duty or authority has reason to receive . . . information." (Citations omitted.) *Kurtz*, 188 Ga. App. at 15 (3). See *Freeman v. Piedmont Hosp.*, 209 Ga. App. 845, 847-848 (1) (434 SE2d 764) (1993), rev'd on other grounds, 264 Ga. 343 (444 SE2d 796) (1994). "The legal fiction that no publication has occurred when the above criteria are met is based on the sentiment that statements by either in the hearing of the other concerning such matters are the legal equivalent of speaking only to one's self." (Citation and punctuation omitted.) *Kurtz*, 188 Ga. App. at 15 (3). In that situation, no viable defamation action exists. Id.

Deloitte argues that, although it is a separate and distinct company from ContiGroup, the unique nature of the accountant-client relationship so aligns its interests with that of ContiGroup that it renders the two an "association" within the intracorporate exception to the publication rule. Thus, Deloitte argues that the communications between the two companies on matters germane to the audit are not actionable in a defamation action.

When examining the dealings between Deloitte and ContiGroup, we reject Deloitte's argument that the privileged relationship should be treated as one akin to that of a single corporation or association in the context of a defamation suit. Such a finding would require us to conclude that communications between the accountant and its audit client are analogous to a single entity engaging in a dialogue with

134

itself. *Kurtz*, 188 Ga. App. at 15 (3). But to the contrary, an accountant hired to audit the financial statements of a client has a distinct duty to remain independent of the client. *TSG Water Resources v. D'Alba & Donovan Certified Public Accountants*, 366 FSupp.2d 1212, 1227 (IV) (S.D. Ga. 2004), overruled on other grounds, 260 Fed. Appx. 191 (11th Cir. 2007). As the United States Supreme Court has observed, an accountant's responsibilities extend beyond its duty to the audit client.

> By certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a public responsibility transcending any employment relationship with the client. The independent' public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders, as well as to the investing public.

(Emphasis omitted.) *United States v. Arthur Young & Co.*, 465 U. S. 805, 817-818 (IV) (B) (104 SC 1495, 79 LE2d 826) (1984). Autonomy is thus critical to the accountant-audit client relationship. Id. at 818 (IV) (B). ("This 'public watchdog' function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust.").

For this reason, Deloitte's argument that it and ContiGroup should be treated as a single entity for the purpose of Saye's defamation claims fails. See *Elder*, 205 Ga. App. at 146-147 (2) (communications between a doctor and her patients, although privileged, were published because the doctor and her patients were not part of the same group or association). Compare *Galardi v. Steele-Inman*, 266 Ga. App. 515, 519-520 (2) (597 SE2d 571) (2004) (communications between two separate entities contractually engaged in a joint enterprise for the purpose of conducting a special event were not published).[3] Deloitte's communications to ContiGroup were thus published, and that element of Saye's defamation claims has been met. *Elder*, 205 Ga. App. at 146-147 (2).

---

[3] Specifically, *Galardi* involved two separate corporations – a promoter and an operator – which entered into a joint venture contract for the purpose of mutually conducting a pageant. Id. at 519 (2). The contract assigned specific duties to each entity in conjunction with the planned competition. Id. We held that the business relationship of the parties and their respective responsibilities in the undertaking of the pageant justified their treatment as a single entity for that particular venture. Id. at 519-520 (2). "A joint venture is created when two or more combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control, provided the arrangement does not establish a partnership." (Citation and punctuation omitted.) *Stallings v. Sylvania Ford-Mercury*, 242 Ga. App. 731, 735 (2) (533 SE2d 731) (2000). The accountant-audit client relationship in this case does not meet that test.

In summary, because Saye adequately alleged that Deloitte's statements were made maliciously, a question remains as to whether they were privileged. Her allegations also establish that the statements were published. It follows that we cannot say with certainty at this stage in the proceedings that Saye would not be entitled to relief under any state of provable facts; therefore, the trial court erred in granting Deloitte's motion to dismiss the defamation claims. See, e.g., *Scouten*, 283 Ga. at 73-74 (2); *Fedderwitz*, 195 Ga. at 691.

2. *Tortious Interference with Business and Employment Relations*. We must likewise reverse the trial court's dismissal of Saye's cause of action for tortious interference with business and employment relations. Proof that Deloitte acted maliciously and without privilege is a required element of Saye's claim. See *Smith v. Morris, Manning & Martin, LLP*, 293 Ga. App. 153, 163-164 (3) (666 SE2d 683) (2008) (tortious interference with business relations); *Lee v. Gore*, 221 Ga. App. 632, 634 (1) (472 SE2d 164) (1996) (tortious interference with employment relations). In its dismissal order, the trial court reasoned that, because the challenged statements were not published and therefore not defamatory, they were not improper and could not support an intentional interference claim as a matter of law. But, as discussed in Division 1, the alleged statements were published, and the determination of whether they were privileged remains outstanding in the face of Saye's allegations of malice. *Sherwood*, 157 Ga. App. at 544. As before, we cannot conclude with certainty that Saye would not be entitled to relief if she proves the assertions made in her complaint. Accordingly, the trial court also erred in dismissing this claim. *Nicholson v. Windham*, 257 Ga. App. 429, 432-433 (2) (571 SE2d 466) (2002); *Lee*, 221 Ga. App. at 634-635 (1).

*Judgment reversed. Mikell and Adams, JJ., concur.*

DECIDED NOVEMBER 25, 2008 —
RECONSIDERATION DENIED DECEMBER 11, 2008 —

*Buckley & Klein, Edward D. Buckley III, John F. Beasley, Jr.*, for appellant.

*Sutherland, Valerie S. Sanders, Amelia T. Rudolph*, for appellee.