## A11A0916. WERTZ v. ALLEN.

(721 SE2d 122)

MILLER, Presiding Judge.

Appellant Erik Van Wertz filed an action against Appellee Lashonda Bonner Allen, alleging fraud and defamation.[1] Allen moved for summary judgment. Finding that no genuine issues of material fact existed, the trial court granted Allen's motion for summary judgment.[2] Wertz appeals the trial court's summary judgment ruling, arguing that Allen's defamatory statements were not protected by an absolute or conditional privilege, and that Wertz otherwise established each element of a claim for defamation. Wertz further contends that he alleged sufficient facts to support a claim of fraud. For the reasons that follow, we affirm.

A defendant can prevail on a motion for summary judgment "by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." (Punctuation and footnote omitted.) *Community Newspaper Holdings v. King*, 299 Ga. App. 267, 268 (682 SE2d 346) (2009). "On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations omitted.) *Campbell v. The Landings Assn.*, 289 Ga. 617, 618 (713 SE2d 860) (2011).

So viewed, the evidence shows that Wertz was enrolled in the respiratory therapy program at Macon State College ("MSC") in 2006. As part of the respiratory therapy program, Wertz was required to complete a one-semester clinical externship that involved working 36 12-hour shifts at one of the hospitals with which MSC had a contract. Wertz was assigned to the Medical Center of Central Georgia (the "Georgia Medical Center") for his externship in 2006. During each of his shifts at the Georgia Medical Center, Wertz worked alongside an assigned "preceptor," who served as his mentor.[3]

On March 30, 2006, Wertz was scheduled to work a 12-hour shift, and Allen, a respiratory therapist at the Georgia Medical

---

[1] Although a claim of intentional infliction of emotional distress was also raised in his original complaint, such was omitted from his amended complaint.

[2] The trial court also granted summary judgment as to Wertz's claim for intentional infliction of emotional distress, because Wertz subsequently admitted that he did not have a viable claim for such.

[3] A preceptor was typically a licensed respiratory therapist employed at the hospital where the student was externing.

Center, was assigned as his preceptor. Wertz had also scheduled an interview — regarding prospective future employment at the Coliseum Medical Center ("Coliseum") — during his March 30, 2006, shift at the Georgia Medical Center. Wertz told the MSC respiratory therapy program director about the interview, who in turn advised Wertz to notify his preceptor both when he left for the interview, as well as upon his return to the Georgia Medical Center after the interview. Wertz claims that on March 30, 2006, he told Allen that he was going to Coliseum for an interview, and that Allen told him "yeah, that's fine, as long as you told [the MSC respiratory therapy program director] where you're going." Allen denied these allegations. Wertz subsequently went to the Coliseum interview during his lunch break, but failed to electronically clock-out before leaving the Georgia Medical Center, as he was required to do under MSC's externship policies. The record reflected that Wertz clocked-in at 6:23 a.m. and clocked-out at 6:21 p.m., for a total of 11.967 hours at the Georgia Medical Center on March 30, 2006.

While at Coliseum for his interview, Wertz was incidentally seen by one of his MSC professors. Shortly thereafter, the professor went home and accessed the MSC externship electronic timekeeping system; despite his absence from the Georgia Medical Center, the system indicated that Wertz was nevertheless clocked-in for his 12-hour shift. The professor contacted the Georgia Medical Center department educator to ask if she could identify the preceptor to whom Wertz was currently assigned and find out what Wertz was doing at Coliseum during his shift. Allen told the Georgia Medical Center department educator that Wertz had been with her all day, and that she was not aware Wertz had left for an interview; the Georgia Medical Center relayed this information to the MSC professor.

Several days later, while at the MSC campus, Wertz and the professor got into a confrontation regarding the incident. According to the MSC professor and a witness, Wertz proceeded to engage in a loud and aggressive argument with the professor. Although Wertz denied that he was the aggressor, the confrontation resulted in Wertz being charged with two violations of the MSC student code of conduct for harassing and intimidating behavior toward the MSC professor. Wertz was notified that given the nature of the allegations, as well as the previous disciplinary warning on his record,[4] the

---

[4] In 2005, MSC sponsored Wertz and other MSC students to attend a respiratory care convention at a hotel in San Antonio, Texas. Management of the hotel contacted MSC faculty regarding a complaint about Wertz and another student shining a laser pointer at hotel guests. Wertz admitted to the conduct, and MSC issued Wertz a disciplinary warning. Wertz's warning notified him that should he receive any future conduct complaints, they would be forwarded

charges were being forwarded to the MSC student disciplinary committee for adjudication and that a disciplinary hearing would be held. Before the hearing, Wertz typed a letter for Allen to sign, which read as follows:

> To Whom It May Concern:
>
> This letter is to verify that Erik Wertz worked with me on the day in question. Erik did not take a breakfast or lunch break during his 12 hour shift. Erik told me that he had prior approval from [the MSC respiratory therapy program director] to attend a job interview at the Coliseum. Erik did return promptly from his interview and finished out his shift. Erik was allowed to go to the library once to look up some information for school. Other than that he was by my side the entire shift. Erik is a hard worker and pleasant to work with. He will make a good respiratory therapist.
>
> Thank You, [Allen]

Wertz claims that he showed this letter to Allen, who read it, made a copy of the unsigned letter for herself, signed Wertz's copy of the letter, and returned the signed letter to Wertz. Allen, however, stated that she refused Wertz's requests to write or otherwise sign a letter on his behalf. Allen testified that it was not her signature at the bottom of Wertz's letter.

Wertz further claims that on the morning of his disciplinary hearing, April 18, 2006, Allen called him to ask him whether he needed her to attend the hearing with him. Wertz testified that he told Allen she did not need to go because he had her signed letter. Allen testified that Wertz called her on a daily basis up until the date of his disciplinary hearing, but that the substance of those conversations consisted only of Wertz asking her to sign the letter and Allen declining to do so.

Wertz nevertheless presented a signed version of the letter at his disciplinary hearing. The MSC student discipline committee found Wertz responsible for having violated the MSC student code of conduct as charged, and Wertz was placed on disciplinary probation.

On April 20, 2006, several MSC faculty, including the dean of students and the respiratory therapy program director, met with Georgia Medical Center personnel, including Allen, the hospital's respiratory therapy supervisor, and the hospital's director of respi-

---

immediately to the MSC student disciplinary committee for adjudication.

ratory care services (the "April 20th meeting"). At this meeting, Allen told the MSC dean that she had not signed the letter that Wertz submitted at his disciplinary hearing. Wertz consequently received a letter from the MSC dean charging him with additional MSC student code of conduct violations for submitting a fraudulent document, that was neither written nor signed by Allen, at his disciplinary hearing. The letter notified Wertz that he was being placed on interim suspension from MSC effective immediately, that he was no longer eligible to participate as an extern at the Georgia Medical Center, and that he was scheduled for an expulsion hearing at which Georgia Medical Center personnel, including Allen, would testify. At the expulsion hearing, Allen testified that she did not sign the letter. Wertz was found to have again violated the student code of conduct and was expelled from MSC, receiving the letter grade of "F" in each of his spring semester 2006 classes. Wertz appealed the decisions from both his disciplinary and expulsion hearings through the MSC appeals process and the Board of Regents of the University System of Georgia, but his expulsion was upheld. Wertz subsequently attempted to seek damages by filing a pro se complaint against Allen for defamation, fraud, and intentional infliction of emotional distress. Wertz claimed that he suffered special damages as a result of Allen's statements because he was expelled from MSC and his expulsion foreclosed any chance of him completing his degree or otherwise becoming employed by Coliseum as a respiratory therapist.

1. In his first enumeration of error, Wertz claims that the trial erred in granting Allen's motion for summary judgment as to Wertz's defamation claim. Generally, there are four elements in a cause of action for defamation: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." (Citation and punctuation omitted.) *Eason v. Marine Terminals Corp.*, 309 Ga. App. 669, 672 (1) (b) (710 SE2d 867) (2011). Wertz complains that Allen's statements that she did not sign Wertz's letter, made at the April 20th meeting and the MSC expulsion hearing, amounted to defamation. In Allen's motion for summary judgment, she argued that any defamatory statements she might have made were protected by a privilege; or in the alternative, Wertz could not establish the elements of defamation insofar as Allen made no defamatory statements, and even if she did, there was no publication. Even assuming without deciding that Wertz established the other three elements of defamation, we agree that Allen's statements were privileged. There was thus no error in granting summary judgment as to Wertz's defamation claim.

Georgia law recognizes two different kinds of privileged communications, absolute and conditional. *Saye v. Deloitte & Touche, LLP*, 295 Ga. App. 128, 130 (1) (a) (670 SE2d 818) (2009) (citing OCGA §§ 51-5-7, 51-5-8). "[C]ommunications which are afforded an absolute privilege cannot form the basis of a defamation action, regardless of the falsity of the statements or the speaker's malicious intent; conditionally privileged statements, on the other hand, are actionable upon a showing of malice." (Citations omitted.) Id. at 131 (1).

Here, Allen's alleged defamatory statements were made at a meeting between faculty members of a college and personnel of a hospital involved with the college's student externship program — i.e., the April 20th meeting — as well as at a student disciplinary proceeding conducted by the college and pursuant to the college's student code of conduct — i.e., Wertz's expulsion hearing. These statements fall within the ambit of conditionally privileged communications.[5] OCGA § 51-5-7 affords a conditional privilege to statements made in good faith in the performance of a moral private duty, as well as statements made with a good faith intent on the part of the speaker to protect her interest in a matter in which it is concerned. See OCGA § 51-5-7 (2), (3). To make this defense of conditional privilege complete, however, "good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear." (Citation and punctuation omitted.) *Dominy v. Shumpert*, 235 Ga. App. 500, 504-505 (2) (510 SE2d 81) (1998). Allen made such a showing with regard to her statements denying that she signed Wertz's letter. See *Meyer v. Ledford*, 170 Ga. App. 245, 247 (1) (316 SE2d 804) (1984) (holding that defendant established the applicability of conditional privilege under OCGA § 51-5-7, and was therefore entitled to summary judgment, where the defamatory statement was given at the request of speaker's superior officer in the course of an official investigation concerning improper conduct by a fire department official). In the course of the investigation concerning improper conduct by Wertz, Allen, as well as her supervisor and the Georgia Medical Center director of respiratory care services, attended the April 20th meeting, where the MSC dean of students specifically asked Allen whether she had signed the letter submitted by Wertz at his disciplinary hearing. In the course of that same investigation, Allen was subsequently requested to appear at Wertz's expulsion hearing, where she made the statement only at the specific request of the

---

[5] Although Wertz argues that Allen's statements were not absolutely privileged, we need not address whether the absolute privilege applied in this case since the evidence clearly establishes that the conditional privilege applied.

MSC disciplinary committee hearing officer.

"The effect of [a conditional] privilege is to require the plaintiff to prove actual malice." (Citation and punctuation omitted.) *Dominy*, supra, 235 Ga. App. at 505 (3). "Consequently, the determination of whether [Allen's] statements were privileged, and thus immune from liability, turns on the issue of malice." *Saye*, supra, 295 Ga. App. at 132 (1) (a) (citing OCGA § 51-5-9).[6] Wertz made only conclusory allegations that Allen's "statements about her signature were not made in good faith because she knew them to be false at the time she made them." He proffered no additional evidence, however, showing actual or express malice. See *Saye*, supra, 295 Ga. App. at 133 (1) (a) ("[T]he burden is ultimately on [the plaintiff] to furnish proof of malice, and conclusory allegations of conspiracy, malice, and defamation are insufficient — in the absence of substantiating fact or circumstances — to raise a material issue for trial.") (citation and punctuation omitted).

As described above, Allen's testimony is that she made the statements only in response to direct questions asked by MSC faculty in the course of the college's disciplinary investigation concerning Wertz. Allen also testified that she never had any problems with, bad feelings toward, or biases against Wertz. Wertz testified at his deposition that Allen was "[n]ot at all" biased against him, and that he had no problems with Allen. When subsequently asked why, if Allen had in fact signed the letter, she would have subsequently made statements denying the same, Wertz testified, "The only thing I can think of is she was steered by her superiors. I don't know. I'm not [Allen]." "This evidence, when coupled with the showing of [conditional] privilege eliminated any genuine issue of material fact in this regard and placed the burden on plaintiff to come forward with a showing of express malice." (Citation and punctuation omitted.) *Dominy*, supra, 235 Ga. App. at 505 (3). As the record in this case fails to rebut the existence of a conditional privilege with evidence of actual or express malice, summary judgment against him was proper as to his defamation claim.

2. In Wertz's second enumeration of error, he claims that the trial court erred in granting summary judgment as to his fraud claim. "To survive a motion for summary judgment on a fraud count, some evidence must support each of the five elements, which are: a false representation by a defendant; scienter; intention to induce the plaintiff to act or refrain from acting; justifiable reliance by plaintiff;

[6] OCGA § 51-5-9 provides that "[i]n every case of privileged communications, if the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action."

and damage to the plaintiff." (Citation omitted.) *Harris v. Distinctive Builders, Inc.*, 249 Ga. App. 686, 690 (2) (549 SE2d 496) (2001). "Because summary judgment is appropriate if only one essential element of [Wertz's] claim is eliminated, we need not address all the issues raised on appeal or in the motion for summary judgment to resolve this [enumeration of error]." (Citation and punctuation omitted.) *Johnson v. Rodier*, 242 Ga. App. 496, 498 (2) (529 SE2d 442) (2000).

Wertz's fraud claim was based upon his conclusory allegation that because Allen had signed the letter, her phone call to Wertz on the morning of his disciplinary hearing was a false representation. Wertz alleged that by calling to ask whether Wertz needed her to attend the disciplinary hearing, Allen "implied to [Wertz] that she would support him and that she stood by the statements in the letter she had signed." In her motion for summary judgment, Allen argued that there was a lack of evidence establishing the requisite elements of Wertz's fraud claim, specifically including a false representation made to Wertz. Once Allen pointed to the absence of evidence to support this element of Wertz's fraud claim, Wertz "had to come forward with specific evidence giving rise to a triable issue." (Punctuation and footnote omitted.) *Roberts v. Nessim*, 297 Ga. App. 278, 284 (1) (b) (676 SE2d 734) (2009). In his summary judgment response, however, Wertz failed to direct the trial court to any evidence supporting the false representation element of his fraud claim, and he also fails to do so on appeal. See id. Even when viewed in the light most favorable to Wertz, the evidence he identifies on appeal shows only that Allen called Wertz the morning of his disciplinary hearing to ask whether Wertz needed her to be there. This evidence fails to support Wertz's conclusory allegation, or otherwise establish, that Allen's phone call amounted to a false representation. Under these circumstances, Wertz has not demonstrated reversible error in the trial court's grant of summary judgment to Allen on Wertz's fraud claim. See id.

*Judgment affirmed. Ellington and Doyle, JJ., concur.*

DECIDED NOVEMBER 16, 2011 —
RECONSIDERATION DENIED DECEMBER 5, 2011.

*Donald W. Johnson*, for appellant.
*Sell & Melton, John A. Draughon, Julia H. Magda*, for appellee.