**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**December 15, 2016**

# In the Court of Appeals of Georgia

A16A1937. EXAMINATION MANAGEMENT SERVICES, INC.
v. STEED.

ELLINGTON, Presiding Judge.

Pursuant to a granted application for interlocutory appeal, Examination Management Services, Inc. d/b/a ICS Merrill ("EMSI") appeals from the order of the State Court of Fulton County denying its motion for summary judgment. As explained below, because the undisputed evidence shows that EMSI is not liable to Steed on his claims for defamation (slander and slander per se) and false imprisonment, we reverse the state court's order.

1. When reviewing a trial court's order on a motion for summary judgment, this Court must

construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences. The

party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact. Our review of the grant or denial of a motion for summary judgment is de novo.

(Citation and Punctuation omitted.) *Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 82 (30 (779 SE2d 334) (2015). So viewed, the record shows the following.

On April 22, 2014, Juliette Lowe, an investigator employed by ICS Merrill,[1] was conducting surveillance of Steed. The investigation was related to Steed's pending workers' compensation claim. At around 11:00 a.m., Lowe called 911 to report that she had seen Steed, a convicted felon,[2] standing on the porch of his apartment, cocking a sawed-off shotgun. The transcript of the 911 call shows that Lowe informed the police that Steed may have already left the apartment to go to an appointment, but that she was making the call because she felt that it was her civic

---

[1] ICS Merrill is a division of EMSI. ICS Merrill does investigatory work, primarily for insurance companies.

[2] The record shows that, pursuant to a pardon granted on April 5, 2013, Steed's civil liberties, except his right to bear arms, were restored. The pardon reflects that Steed had been convicted of armed robbery, kidnapping/false imprisonment, terroristic threats and acts, and child molestation.

duty to report what appeared to be an "illegal weapon." She described Steed, his clothing, and his car.

Police officers employed by the City of College Park responded to Steed's apartment to investigate the call. Lowe was not present. According to the police, Steed was uncooperative; he was loud, sarcastic, and profane; he refused to provide identification or to allow an officer to pat him down for weapons; and he refused to move away from his open doorway. Consequently, the officers handcuffed him and walked him to a patrol car while they investigated the complaint. Steed tried to kick one of the officers as he was being escorted into the patrol car. Steed agrees with the officers' description of the general sequence of events; however, he denies being uncooperative, that he obstructed the officers in their investigation, or that he tried to kick an officer. Rather, he contends that a senior officer, a sergeant, became irate with him, started showing off to impress a rookie officer, and abused his position of authority by roughly handcuffing him and then manhandling him into the patrol car.

The officers spent about 15 minutes walking through Steed's apartment and looking inside his car, but they did not see a shotgun. The officers averred that, though they released Steed, they believed that they had probable cause to arrest him for disorderly conduct and obstruction. They also averred that Steed was not detained

3

based on the nature of the 911 call or because of any statement that Lowe had made; rather, the police made an independent decision to detain Steed based on his behavior during their investigation.

1. *Defamation.* Steed contends that Lowe's 911 call was defamatory[3] in that she accused him of having committed a crime. Pursuant to OCGA § 51-5-4 (a) (1), "[s]lander or oral defamation consists in . . . [i]mputing to another a crime punishable by law[.]" Lowe's statement that Steed, a convicted felon, possessed a sawed-off shotgun alleges criminal conduct.[4] However, as EMSI contends and as Steed acknowledges, Lowe's 911 call is subject to a privilege. By statute, statements "made in good faith in the performance of a public duty" or "in good faith in the

---

[3] In Georgia, a viable cause of action for defamation, whether slander or libel, "consists of (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." (Citations and punctuation omitted.) *Saye v. Deloitte & Touche, LLP*, 295 Ga. App. 128, 129-130 (1) (670 SE2d 818) (2009).

[4] OCGA § 16-11-131 (b) provides that "[a]ny person … who has been convicted of a felony by a court of this state or any other state … who receives, possesses, or transports any firearm commits a felony." OCGA § 16-11-122 provides that "[n]o person shall have in his possession any sawed-off shotgun, sawed-off rifle, machine gun, dangerous weapon, or silencer except as provided in Code Section 16-11-124."

4

performance of a legal or moral private duty" are communications subject to a

conditional[5] privilege. OCGA § 50-5-7 (1), (2). Under Georgia law,

> [r]eporting criminal behavior is expected and even demanded of the
> ordinary citizen, who should not be discouraged from reporting what he
> knows to the authorities and from lending his aid to secure evidence of
> a crime. Indeed, in Georgia, it is the duty of one having such information
> to report it to those in authority.

(Footnotes omitted.) *Camp v. Eichelkraut*, 246 Ga. App. 275, 285 (7) (539 SE2d 588)

(2000). See also *Wall v. Seaboard Air-Line R.*, 18 Ga. App. 457 (3) (89 SE 533)

(1916) ("Upon grounds of public policy, communications which would otherwise be

slanderous are protected as privileged, if made in good faith in the prosecution of an

inquiry regarding a crime which has been committed, and for the purpose of detecting

and bringing to punishment the criminal.").

To set forth its conditional privilege defense, EMSI was required to show that

Lowe acted in good faith, had an interest to uphold (in this case a public duty), gave

---

[5] Georgia law recognizes two different kinds of privileged communications, absolute and conditional. *Saye v. Deloitte & Touche, LLP*, 295 Ga. App. at 130 (1) (a) (citing OCGA §§ 51-5-7, 51-5-8, 51-5-9). "[C]ommunications which are afforded an absolute privilege cannot form the basis of a defamation action, regardless of the falsity of the statements or the speaker's malicious intent; conditionally privileged statements, on the other hand, are actionable upon a showing of malice." (Citations omitted.) Id. at 131 (1).

a statement properly limited in its scope and upon a proper occasion, and that the publication was made to proper persons, in this case, the police. See *Smith v. Vencare, Inc.*, 238 Ga. App. 621, 625 (2) (c) (519 SE2d 735) (1999); *Dominy v. Shumpert*, 235 Ga. App. 500, 504-505 (2) (510 SE2d 81) (1998). The transcript of Lowe's 911 call was sufficient to satisfy these requirements. It showed that Lowe called the police because she believed she had a civic duty to report witnessing what she thought was criminal conduct. See *Meyer v. Ledford*, 170 Ga. App. 245, 247 (1) (316 SE2d 804) (1984) (holding that the defendant established the applicability of a conditional privilege under OCGA § 51-5-7 where the defamatory statement was given at the request of speaker's superior officer in the course of an official investigation concerning improper conduct by a fire department official).

Once EMSI established the existence of a conditional privilege, the burden shifted from it to Steed to show that Lowe's statements were made with malice. As we have explained, "[t]he effect of a conditional privilege is to require the plaintiff to prove actual malice. Consequently, the determination of whether [Lowe's] statements were privileged, and thus immune from liability, turns on the issue of malice." (Citation, punctuation, and footnote omitted.) *Wertz v. Allen*, 313 Ga. App. 202, 207 (1) (721 SE2d 122) (2011). See also *Saye v. Deloitte & Touche, LLP*, 295

6

Ga. App. at 132 (1) (a) ("[T]he burden is ultimately on [the plaintiff] to furnish proof of malice, and conclusory allegations of conspiracy, malice, and defamation are insufficient – in the absence of substantiating fact or circumstances – to raise a material issue for trial.") (citation and punctuation omitted).

Steed has not adduced any evidence, either direct or circumstantial, of actual malice. Rather, he argues that malice may be inferred from Lowe's allegedly false report of a crime. However, such an inference is based on speculative possibility, not fact-based probability. As we have explained, when an inference

> is founded on speculation, it is without evidentiary value. As we have held, no inference of fact may be drawn from a premise which is wholly uncertain. And, inferences must be based on probabilities rather than mere possibilities. Moreover, when a party relies on inferences to prove a point, not only must those inferences be factually based, they must tend in some proximate degree to establish the conclusion sought and render less probable all inconsistent conclusions.

(Citations and punctuation omitted.) *Ogletree v. Navistar Intl. Trans. Corp.*, 245 Ga. App. 1, 7 (1) (535 SE2d 545) (2000).

In this case, it is true that the police did not find a shotgun in Steed's car or apartment. While it is possible that Lowe lied to the police about Steed having a shotgun, it is also equally possible that Steed successfully hid or disposed of the

7

shotgun before the police arrived. Moreover, while it is possible, as Steed argues in his appellate brief, that Lowe was motivated to call 911 in the hope that Steed would be "put behind bars" and therefore deprived of his workers' compensation benefits, it is also possible that Steed was aware of Lowe's presence and cocked the shotgun at her to intimidate her. These inferences are speculative because they do not render less probable other contrary or inconsistent inferences that may be drawn from the circumstances. See id. See also *Williams v. Booker*, 310 Ga. App. 209, 211-213 (1) (712 SE2d 617) (2011) (a reasonable inference cannot be based on mere conjecture or probability, or on evidence that is too uncertain or speculative); *Denson Heating & Air Conditioning Co., Inc. v. Oglesby*, 266 Ga. App. 147, 148 (596 SE2d 685) (2004) (accord). Therefore, as the record in this case fails to rebut the existence of a conditional privilege with evidence of actual malice, the trial court erred in denying EMSI's motion for summary judgment on EMSI's defamation claims. See *Wertz v. Allen*, 313 Ga. App. at 207 (1) ("As the record in this case fails to rebut the existence of a conditional privilege with evidence of actual or express malice, summary judgment against [the plaintiff] was proper as to his defamation claim."); *Cleveland v. Greengard*, 162 Ga. App. 201, 202 (290 SE2d 545) (1982) ("Since the appellee neither encouraged nor commanded any law enforcement officer to arrest or prosecute

8

the appellant, and the record is devoid of any suggestion of malice or bad faith, the reporting of the appellant's actions under such circumstances is privileged[.]").

2. *False Imprisonment*. OCGA § 51-7-20 defines the intentional tort of false imprisonment as "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." "The essential elements of the cause of action for false imprisonment are a detention of the person of another for any length of time, and the unlawfulness of that detention." (Citation omitted). *Fields v. Kroger Co.*, 202 Ga. App. 475 (414 SE2d 703) (1992). In this case, the police, not EMSI, detained Steed. Therefore, even if the evidence supports an inference that the police unlawfully detained Steed, his claim against EMSI fails if the evidence does not support an inference that EMSI caused or directed the police to detain him. As this Court has explained,

> one who actively instigates or procures an arrest, without lawful process, is generally regarded as the principal for whom the officer acts, and he may be liable to respond in damages. But one who merely states to an officer what he knows of a supposed offense, even though he expresses the opinion that there is ground for the arrest, but without making a charge or requesting an arrest does not thereby make himself liable for false imprisonment. It is not necessary that he direct the arrest in express terms. Rather, it is sufficient that the person alleged to have caused the

9

plaintiff's arrest should by his conduct and acts have procured and
directed the arrest.

(Citations and punctuation omitted.) *Scott Housing Systems v. Hickox*, 174 Ga. App.
23, 25 (1) (329 SE2d 154) (1985).

In this case, the evidence shows only that Lowe reported having seen Steed
with what she believed was an illegal sawed-off shotgun. She did not swear out a
warrant against Steed nor did she urge or direct the police to arrest him. Her 911 call
prompted an investigation only. Moreover, according to the officers' sworn
statements, Steed's detention had nothing to do with Lowe's 911 call or the allegation
that Steed possessed a sawed-off shot-gun.[6] Rather, the officers stated unequivocally
that they independently decided to detain Steed based on his disorderly conduct and
efforts to obstruct their investigation. Finally, Steed himself deposed that his
detention was the result of the misconduct of a lone officer who abused his authority
to impress a rookie. Because the undisputed evidence shows EMSI did not cause or
direct the police to detain Steed, his claim of false imprisonment fails as a matter of
law. See, e.g., *Welton v. Ga. Power Co.*, 189 Ga. App. 17, 20 (2) (375 SE2d 108)

---

[6] As discussed in Division 1, supra, that the police did not find the shotgun in
Steed's possession does not give rise to a reasonable inference that Lowe was lying.

10

(1988) (Because the undisputed evidence showed that the defendant's employee did not instigate or procure the plaintiff's detention, summary judgment for the defendant was proper.). See also *Arrowsmith v. Williams*, 174 Ga App. 690, 692 (2) (331 SE2d 30) (1985) ("[I]f the decision to arrest or prosecute is left to the uncontrolled discretion of the officer, or if the officer makes an independent investigation or prosecutes for an offense other than the one charged by the private person, the latter will not be deemed as having instigated the proceedings.").

3. *Punitive damages and attorney fees*. Finally, Steed is not entitled to punitive damages or attorney fees under OCGA § 13-6-11 because, given the outcome of this appeal, he has not prevailed on any of the claims asserted in his complaint. See *Burns v. Dees*, 252 Ga. App. 598, 608 (1) (e) (557 SE2d 32) (2001) ("[The plaintiff's] claims for attorney fees and punitive damages rest upon the weight of his other claims. As [he] has not prevailed on any of his enumerations, his claims for attorney fees and punitive damages must fail.") (footnotes omitted). See also *R.T. Patterson Funeral Home v. Head*, 215 Ga. App. 578, 586 (5) (451 SE2d 812) (1994) ("Inasmuch as defendants . . . are not liable to plaintiff for compensatory damages under either theory submitted to the jury, they cannot be held liable for OCGA § 13-6-11 attorney fees and expenses of litigation."); *Viau v. Fred Dean, Inc.*, 203 Ga.

11

App. 801, 804 (4) (418 SE2d 604) (1992). (Because the defendant had no liability for the injuries resulting from the collision, there could be no recovery of punitive damages against the defendant.).

*Judgment reversed. Branch and Mercier, JJ., concur*.