A03A2120. KEN THOMAS OF GEORGIA, INC. v. HALIM.
(597 SE2d 615)

ANDREWS, Presiding Judge.

Kabir Halim sued for injuries he allegedly suffered when Koreem Campbell, the driver of the car in which he was riding as a passenger, lost control of the car and crashed. The car was owned by Ken Thomas of Georgia, Inc. d/b/a Ken Thomas BMW Acura (Ken Thomas), which loaned the car to Campbell to use while Ken Thomas serviced Campbell's car. Halim sued Campbell and Ken Thomas claiming that Campbell recklessly drove the car off the road at a high rate of speed causing it to flip over numerous times, and that Ken Thomas negligently entrusted the car to Campbell. After deposing Campbell, Halim dropped the negligent entrustment claim against Ken Thomas and alleged that the crash occurred because "the steering on the vehicle pulled sharply to the left causing the vehicle to enter the median and flip over multiple times." Based on the allegation that a malfunction in the car's steering caused the accident, Halim added claims against Ken Thomas that the car was unsafe to drive and that Ken Thomas negligently failed to maintain or repair the car and negligently failed to warn of its unsafe condition. Halim also added a claim alleging that, even if there was a lack of evidence to establish his negligence claims, Ken Thomas was liable for his injuries under the doctrine of res ipsa loquitur. The trial court granted Ken Thomas's motion for summary judgment on Halim's claim based on res ipsa loquitur, but denied the motion as to the negligence claims. We granted Ken Thomas's application for an interlocutory appeal from the partial denial of its motion. For the following reasons, we find the trial court erred by denying Ken Thomas's motion for summary judgment and reverse.

In support of his negligence claims against Ken Thomas, Halim relies on Campbell's deposition testimony. Campbell testified that at his request Ken Thomas gave him a loaner car while his car was being

serviced. Campbell said he drove the loaner car about 20 miles from the Ken Thomas dealership to Fort Benning, where he and Halim were stationed as members of the U. S. Army, then picked up Halim as a passenger and drove back to the dealership in response to a call about the service on his car. The accident occurred as Campbell and Halim were driving back to Fort Benning from the dealership. Campbell was asked if he noticed any problems while driving the loaner car prior to the accident.

> Q. Did you detect anything at all in the car while you were driving it that gave you reason for concern?
> A. No.
> Q. Were there any problems with the brakes?
> A. Not to my recollection.
> Q. Were there any problems with the rear end or the front end that you noticed?
> A. No.
> Q. Were there any unusual noises at all?
> A. No.

In describing the accident Campbell further testified that:

> A. [I]t was going straight, and then all of a sudden it just — I didn't hear any — I don't know what happened. It just popped and went to the side of the road. . . . The steering wheel pulled to the left . . . [e]nough that I couldn't control it. . . . [I]t just shot to the left where, I mean, I really couldn't control it. . . . [The steering wheel] jerked real vigorously to the left.

Emphasizing the sudden nature of the malfunction, Campbell also testified that, prior to the accident, he did not notice any problem with the car's steering.

A traffic accident investigator stationed at Fort Benning arrived at the accident scene as Campbell and Halim were being taken away by ambulance. The investigator interviewed Campbell the day after the accident and stated that Campbell made no mention of a steering problem with the car. Based on his investigation, including interviews with two eyewitnesses to the accident, the investigator concluded that Campbell "lost control of his vehicle on a curve due to his failure to pay attention to the roadway and his excessive rate of speed." Nevertheless, as the party opposing summary judgment on the negligence claims, Halim is entitled to have the evidence and all reasonable inferences therefrom construed in his favor, so for the purpose of ruling on the summary judgment motion we assume based

on Campbell's deposition testimony that a sudden steering malfunction in the car was at least a contributing cause of the accident. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991).

In addition to Campbell's testimony about a sudden steering malfunction, Halim contends that records showing Ken Thomas's repairs and maintenance on the car prior to the accident support his negligence claims. Those records show that, about two years prior to the accident at issue, the loaner car was involved in an accident when it was a new car owned by Ken Thomas. The car incurred about $3,500 in damages in the prior accident, almost all of which was paint and body work. The evidence shows that Ken Thomas repaired the car after the accident and used it as a loaner car for over two years until the present accident. At one point, Ken Thomas sold the car to a customer without revealing it had been in an accident, but for unstated reasons the customer was "not happy" with it, and Ken Thomas took it back shortly after the sale and gave the customer another car. Halim points out that the repair records are unclear as to whether or not the car may have sustained damage to a left rear knuckle in the prior accident, and that it is unclear whether or not this damage was repaired. However, Ken Thomas provided an affidavit from an expert automobile mechanic, who worked on the Acura loaner car at issue and other Acura cars at the Ken Thomas dealership, that the knuckle referred to was a part that attached to the rear wheel bearing allowing the wheel to turn and that, regardless of whether it was damaged or replaced, it had no impact on the car's steering. Moreover, Ken Thomas's maintenance records on the loaner car after the first accident up until the accident at issue show there were no complaints by customers about any steering problem with the car, nor did any Ken Thomas employee discover a steering problem with the car or make repairs to any steering or steering related parts of the car in the course of performing regularly scheduled maintenance. The records show that one customer who used the car as a loaner over a year prior to the present accident complained about tire noise. In response to that complaint, new tires were put on the car. About a week later another customer complained of a humming noise coming from the rear of the car. The expert mechanic stated by affidavit that he inspected the car in response to this complaint, determined that the left rear wheel bearing was worn, and replaced it. A four-wheel alignment was also performed at that time. Maintenance records show that about a month later the loaner car passed a complete safety inspection test performed by the same mechanic, including a road driving test. The only other customer complaint about the loaner car involved a broken cupholder. About six months prior to the present accident, Ken Thomas performed scheduled maintenance on the loaner car, which included a road test in

which no unusual steering behavior was reported. At that point, the car had 21,925 miles on the odometer, and the 22,500-mile service check performed by Ken Thomas included tire rotation and balancing, inspection of the suspension system and tightening of all suspension bolts and mounts, and inspection of the drive axles, boots, cooling system, exhaust system, fuel lines and connections, and the vehicle underbody.

The above facts provide direct evidence that a sudden steering malfunction caused or contributed to the accident, but they provide no direct evidence to support Halim's claim that the steering malfunction occurred because Ken Thomas negligently maintained or repaired the car. Rather, Halim claims these facts provide circumstantial evidence sufficient to support a reasonable inference that Ken Thomas either negligently repaired the car in a manner that caused the steering malfunction, or that Ken Thomas was negligent because it failed to discover and repair the steering malfunction to maintain the car in a safe condition. Before addressing the issues relevant to these claims, it is instructive to note why on the above facts the trial court correctly granted summary judgment to Ken Thomas on Halim's res ipsa loquitur based claim.

Res ipsa loquitur is an evidentiary based rule which provides for an inference of negligence to arise from the occurrence of an injury-causing incident when the following elements are present:

> (1) injury of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

(Citation and punctuation omitted.) *Bridgestone Firestone v. Green*, 198 Ga. App. 858, 861 (403 SE2d 442) (1991). Even if element (2) was present because Ken Thomas had exclusive control of the maintenance and repair of the car, the doctrine was inapplicable in the present case because elements (1) and (3) were not present. As to element (3), there was evidence that negligent driving by Campbell may have caused the accident. And element (1) was not present because the steering malfunction could have occurred for reasons other than negligent maintenance or repair by Ken Thomas. In other words, an injury allegedly caused by a mechanical failure in a car is not of a kind that does not occur in the absence of someone's negligence. *Smith v. U-Haul Co. Ga.*, 225 Ga. App. 356, 357 (484 SE2d 49) (1997); *Ellis v. Sears Roebuck & Co.*, 193 Ga. App. 797-798 (388 SE2d 920) (1989). It follows that the trial court correctly rejected Halim's claim based on res ipsa loquitur that, because a steering

malfunction occurred that caused or contributed to the accident, a reasonable inference arose that the malfunction occurred because Ken Thomas negligently maintained or repaired the car.

In the absence of an inference of negligence arising under the doctrine of res ipsa loquitur, Halim must point to circumstantial evidence which supports a reasonable inference that the steering malfunction occurred because Ken Thomas negligently maintained or repaired the car. *Page v. Atlanta Center Ltd.*, 219 Ga. App. 422, 424 (465 SE2d 456) (1995). "When a party is relying on inferences [from circumstantial evidence] to prove a point, not only must those inferences tend in some proximate degree to establish the conclusion sought, but [they] must also render less probable all inconsistent conclusions." Id. "In cases of circumstantial evidence a mere inconclusive inference, or, as the English courts express it, a mere scintilla, is not to be regarded as any evidence, so as to require the submission of its sufficiency to the jury." (Citation and punctuation omitted.) *Allen Kane's Major Dodge, Inc. v. Barnes*, 243 Ga. 776, 781 (257 SE2d 186) (1979). If the circumstantial evidence raises only a mere conjecture as to the conclusion sought, there can be no recovery. *Dawkins v. Doe*, 263 Ga. App. 737, 740 (589 SE2d 303) (2003).

Ken Thomas presented evidence that it repaired the car after it was damaged in the first accident, and that it diligently maintained the car while it was used as a loaner for over two years until the present accident. There was no evidence that the car suffered damage to its steering mechanism or to steering related parts in the first accident or at any point during its subsequent use as a loaner car. Evidence that the loaner car was damaged in the prior accident and repaired; that a buyer was "not happy" with the car, and that two complaints about the car unrelated to the steering were resolved by repairs addressing the complaints, is not sufficient to support a reasonable inference that the steering malfunction in the present accident resulted from negligent repair or maintenance by Ken Thomas. This evidence does not render less probable the conclusion that the car suffered a sudden mechanical malfunction that was not the proximate result of any negligence by Ken Thomas. *Page*, 219 Ga. App. at 424. At best, it supports an "inconclusive inference" or one based on "mere conjecture" that is not sufficient to create an issue of fact. *Barnes*, 243 Ga. at 781; *Dawkins*, 263 Ga. App. at 740. The only shred of evidence that Ken Thomas may not have fully repaired and maintained the car was the record showing that damage to a left rear knuckle on the car may not have been repaired after the first accident. However, Ken Thomas provided unrebutted expert testimony from an automobile mechanic that this part was unrelated to the car's steering and could not have caused the car's steering malfunction. The unrebutted testimony of the expert automobile mechanic "as to

the causation of internal mechanical damage to an automobile" excluded the possibility that any reasonable inference could be drawn from this evidence that negligence by Ken Thomas proximately caused the steering malfunction. *Lamb v. R. L. Mathis Certified Dairy Co.*, 183 Ga. App. 455, 456 (359 SE2d 214) (1987).

Negligence by Ken Thomas proximately causing the accident cannot be reasonably inferred solely from circumstantial evidence showing that it repaired and maintained a car that suffered a sudden mechanical malfunction.

> However willing we are to commit to the jury the solution of every question of fact, yet in the very nature of things, when the determination of the issue rests not on direct proof, but on circumstances, there exists a point where the inferences to be drawn can not, as a matter of law, be sufficient to support a verdict.

(Citation, punctuation and footnote omitted.) *Barnes*, 243 Ga. at 779. Because there was an absence of evidence in the record sufficient to support a reasonable inference that the accident at issue was proximately caused by Ken Thomas's negligent failure to repair or maintain the car, or to warn of any unsafe condition, the trial court erred by denying Ken Thomas's motion for summary judgment. *Lau's Corp.*, 261 Ga. at 491.

*Judgment reversed. Johnson, P. J., Blackburn, P. J., and Mikell, J., concur. Eldridge, Barnes and Adams, JJ., dissent.*

ADAMS, Judge, dissenting.

Although the majority correctly concludes that a jury should determine whether the accident in this case was caused by a steering or other malfunction, I disagree that the evidence of negligent repair or maintenance was insufficient to withstand summary judgment and that, therefore, the trial court's order denying Ken Thomas's motion for summary judgment should be reversed.

> The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When ruling on a motion for summary judgment, the trial court should give the party opposing the motion the benefit of all reasonable doubt and should construe the evidence and all inferences and conclusions therefrom most favorably toward that party. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988). When appellate courts review the grant or denial of a motion for summary judgment, we conduct a de novo review

of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

*Keller v. Henderson*, 248 Ga. App. 526, 527 (1) (545 SE2d 705) (2001).

Giving the benefit of all reasonable doubt to Halim and construing the evidence and all reasonable inferences and conclusions drawn from it in his favor, the evidence shows that there had been problems with the car prior to the accident. According to the evidence, the car was wrecked and extensively damaged when it was new and before it was ever sold off the lot. The car was repaired, and evidence was presented that the left rear knuckle was replaced, although there is some discrepancy in the record about whether this repair was actually completed. Ken Thomas then sold the car without telling the buyer that it had been previously wrecked, but bought the car back because the buyer was "not happy" with it. After the car was returned, Ken Thomas used it as a loaner car for its customers and employees. As the trial court noted, the record contains at least two subsequent complaints by different customers about problems with the car, specifically about a noise coming from the tires. The wheels were replaced after the first complaint and the left wheel bearing was replaced after the second.

Ken Thomas presented several affidavits in support of its motion for summary judgment. A Ken Thomas mechanic averred that the car had been properly maintained and that it "appeared" that the left rear knuckle had been replaced after the first accident and the left rear wheel bearing had been replaced in response to a customer complaint. The mechanic averred that although the wheel bearing and knuckle allow the wheel to turn, a malfunction with those parts would not cause the steering to be uncontrollable.

Although Ken Thomas argues that this affidavit demands the conclusion that summary judgment should be granted in its favor, the trial court found that this and the other expert affidavit Ken Thomas submitted in support of its motion for summary judgment merely set forth the opinion of the affiants, and that the following issues should be resolved by a jury: (1) was the wreck caused by Campbell's negligence or mechanical failure; (2) in light of the various mechanical problems with the loaner car in the past, was Ken Thomas negligent in loaning the car to Campbell, failing to warn Campbell of its condition and failing to maintain, inspect and repair the vehicle; (3) did Ken Thomas fail to use ordinary care. I agree that these issues should be resolved by a jury.

The car was declared a total loss by Ken Thomas's insurer after the accident, and although the car was apparently examined by the insurer, it does not appear that either party conducted a post-accident

examination that would conclusively establish or conclusively disprove whether a mechanical defect caused the accident. Cf. *Aldridge v. King's Colonial Ford*, 250 Ga. App. 236, 237 (550 SE2d 439) (2001) (post accident inspection revealed that nothing was wrong with the brakes, although driver of vehicle had testified that the accident occurred because of brake failure). As the trial court found, the evidence concerning the cause of the accident was conflicting. Campbell testified that the accident occurred because the steering became uncontrollable, and he denied that anything he did while driving the vehicle caused the accident. Ken Thomas submitted an affidavit containing the opinion that the accident occurred due to Campbell's carelessness and fast driving. As the majority correctly concludes, summary judgment on this issue was properly denied. *Morris v. Pulliam*, 168 Ga. App. 442, 445-446 (2) (309 SE2d 423) (1983); *Griffin v. Bremen Steel Co.*, 161 Ga. App. 768, 772 (288 SE2d 874) (1982).

Moreover, I do not think the evidence Ken Thomas submitted from its mechanic concerning the maintenance and repair history of the car demanded that summary judgment be granted. See *Lockhart v. Beaird*, 128 Ga. App. 7, 9 (195 SE2d 292) (1973). Evidence was presented that the car had been extensively damaged in a previous accident, that it had been returned after being sold because the buyer was "not happy" with the car, and that other customers who had used the car complained about wheel noise when the car turned. "Summary judgment is improper when circumstantial evidence is inconsistent with the direct evidence; in such a case, a jury question is created." *Dial v. Natalizi*, 246 Ga. App. 97, 99 (539 SE2d 617) (2000). This car was at all times under the control of Ken Thomas, and the question of whether the car was properly repaired and maintained and should have been loaned out was, as the trial court held, for the jury to determine.

> "It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. The situation is best summed up by the language of Justice Bleckley speaking for the court, in *Brown v. Matthews*, 79 Ga. 1 (4 SE 13) [(1887)]: Truth is often dim, but is truth nevertheless. Frequently amongst the facts best proved is one which no witness has mentioned in his testimony, such fact being an inference from other facts." (Citations and punctuation omitted.) *McCarty v. Nat. Life &c. Ins. Co.*, 107 Ga. App. 178, 183 (2) (129 SE2d 408) [(1962)]. From this

perspective, it is preferable not to have a single trial judge stand in the shoes of the several men and women of various backgrounds who make up a jury and determine what inferences they may draw from the evidence. It is for this reason that trial judges should grant a motion for summary judgment . . . only where the evidence is truly clear, palpable and undisputed. *Pique v. Lee*, 218 Ga. App. 357, 359 (461 SE2d 302) [(1995)].

*Service Merchandise v. Jackson*, 221 Ga. App. 897, 898-899 (1) (473 SE2d 209) (1996). The trial court's order denying Ken Thomas's motion for summary judgment should be affirmed, and a jury allowed to resolve the issues presented in this case.

I am authorized to state that Judge Barnes and Judge Eldridge join in this dissent.

DECIDED MARCH 25, 2004 —

*Swift, Currie, McGhee & Hiers, Charles B. Marsh, Anandhi S. Rajan*, for appellant.

*Slater & King, Cary S. King*, for appellee.