A05A1658. SISSON et al. v. ELLIOTT.
(628 SE2d 232)

PHIPPS, Judge.

Willard and Sue Sisson paid their neighbor, Denise Elliott, to come onto their property to take care of their dogs when they were away. As Elliott was getting water for one of the dogs, the ground gave way underneath her right foot and her right leg fell through the ground into an abandoned well. To recover for her resulting injuries, Elliott brought this action charging the Sissons with negligence in not warning her of the existence of the abandoned well or abating the hazard it created. We granted the Sissons' application for interlocutory appeal from the denial of their motion for summary judgment. Finding no evidence of negligence by them, we reverse.

To prevail on a motion for summary judgment, "the moving party must demonstrate that there are no genuine issues of any material fact and that the undisputed facts, viewed in the light most favorable

to the nonmoving party, support judgment as a matter of law."[1] The following facts are undisputed:

In the mid-1970s, the Sissons bought a tract of land of about 60 acres on which they built a house and began to conduct a small cattle breeding operation. In the mid-1980s, the person from whom they had purchased the property informed them that, on the property, there was an abandoned well that had been filled. Unbeknownst to the Sissons, however, the well had not been filled but instead had been covered over with boards that, at the time of the incident, were about one to two inches below the surface of the ground.

When the Sissons went on vacation, they paid Elliott $10 per day to come to the house to feed, water, and exercise their dogs. One day in November 2001 while the Sissons were on vacation, Elliott was on their property getting water for the dogs when she walked over the grassy area above the well covering. The boards apparently gave way, and her right leg went through the ground creating a hole that was "[b]ig enough for a foot and leg to go down through . . . [p]robably twelve inches [in] diameter." Below the boards was an open pit approximately 30 feet deep.

When the Sissons purchased the tract, the house on the property had burned and only its remnants remained. The Sissons built a new house adjacent to the site of the old one. Surrounding the house was a yard composed of about an acre of land. Years after their purchase, the Sissons learned that an abandoned well was somewhere in the yard, but they did not know where. As it turned out, the well was just a few feet from their back porch near a septic line they had installed. Nothing on the surface of the ground gave any indication that the well was located there. In fact, the Sissons had looked for the well in another area of the yard where the grass tended to die. Moreover, the area where the well was eventually located had been traversed many times by the Sissons, their grandchildren, and even by Elliott. In building the porch and installing the septic line, heavy construction equipment had also been used in the area. And for years the Sissons had used a riding lawn mower to mow grass over the well along with the remainder of their yard. All of these things had occurred without incident. After the Elliott mishap, the Sissons placed a concrete covering over the well hole.

Elliott charges the Sissons with violating OCGA § 44-1-14 by not reporting the existence of the abandoned well to the governing

---

[1] *Hutchins v. J. H. Harvey Co.*, 240 Ga. App. 582, 584 (524 SE2d 289) (1999) (footnote omitted).

authority of the county; with violating OCGA § 51-3-1 by not inspecting the property, discovering the location of the well, and abating the hazard it created; and in breaching a duty to warn her of the presence of the abandoned well.

1. Because the abandoned well or hole on the Sissons' property did not become an "open" abandoned well or hole until after Elliott stepped into it, the Sissons did not violate OCGA § 44-1-14.

OCGA § 44-1-14 (b) authorizes the governing authority of a county to abate the hazard created by any "open abandoned well or hole" located on public or private property either "by covering, filling, or otherwise." OCGA § 44-1-14 (a) defines the term "abandoned well or hole" as "any manmade opening upon the surface of the earth which is ten feet or more in depth and which has not been used for a period of 60 days." The statute is activated whenever it is brought to the attention of any person that an open abandoned well or hole exists on public or private property; it then becomes the duty of such person to immediately inform the governing authority of the county in which the hazard exists; the governing authority may then correct the hazard. Clearly, there was an abandoned well on the Sissons' property that was ten feet or more in depth and that had not been used for years. Indisputably, however, the Sissons did not construct the well; they were told by the former owner of the property that the well had been filled; and, in fact, the well had been covered and remained so until Elliott's mishap. Consequently, OCGA § 44-1-14 did not obligate them to report the well to the county governing authority or to fill it or cover it prior to that time.

2. Because it is further undisputed that there was nothing in the appearance or character of the property to indicate that the well had been defectively covered rather than filled, the law imposed no duty on the Sissons to inspect the property to locate the well or to inform Elliott of its existence.

OCGA § 51-3-1, relied on by Elliott, generally provides:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

Where, however,

> the owner or occupier of premises is without actual knowledge of the existence of a defect, and there is nothing in the appearance or character of the premises or some instrumentality on the premises which would indicate the possible or

probable existence of any defects, there is no reason to think an inspection necessary, and ordinary diligence would not require an inspection of the premises or an instrumentality upon the premises before permitting an invitee to make use of the same.[2]

To hold otherwise would be to impose a duty on the defendants to anticipate the existence of a hazard which they had no reason to believe existed or to impose a duty to exercise extraordinary care to inspect the premises by physically pressing down on the grass on every square foot of the property to discover the possible existence of an obscured depression or indentation in the ground. Thus, where, as here, there was no actual knowledge of the alleged dangerous and unsafe condition, and there is nothing in the record to show or indicate the propriety or necessity of making an inspection to ascertain the possible or probable existence of any defect, such as that other people had tripped or fallen in the same area, ordinary diligence did not as a matter of law, under the facts as shown, require an inspection sufficient to reveal the defect where the defendants had no reason to think such an inspection was necessary.[3]

Although [the Sissons] had a duty to reasonably inspect [their] common areas, it does not follow that [they were] required to conduct an inspection that disclosed every latent defect on the property. If this were the rule, then proprietors would be absolutely liable for all defective conditions on their property. The law does not impose such absolute liability, and because there is no evidence that [the Sissons] had constructive knowledge of the [covered] hole, the trial court [should have] granted summary judgment [to them].[4]

---

[2] *Howerdd v. Whitaker*, 87 Ga. App. 850, 853 (75 SE2d 572) (1953) (citations and punctuation omitted); see also *Clemmons v. Griffin*, 230 Ga. App. 721 (498 SE2d 99) (1998) (repairman burnt due to improper wiring of air conditioning unit could not hold homeowner liable for negligence of prior contractor in wiring unit); compare *Hicks v. Walker*, 262 Ga. App. 216 (585 SE2d 83) (2003) (because homeowners were chargeable with constructive knowledge of a deck's construction defects that amounted to code violations, they were liable for injuries sustained by guests after deck collapsed); *Lawless v. Sasnett*, 200 Ga. App. 398 (408 SE2d 432) (1991) (property owners liable where plaintiff's leg went into a hole that was in existence for a substantial period of time, and was large enough to have been observable during routine mowing and maintenance that had not been undertaken so that the hazard was obscured by grass that needed to be mowed).

[3] *Armenise v. Adventist Health System/Sunbelt*, 219 Ga. App. 591, 594 (466 SE2d 58) (1995) (citations and punctuation omitted).

[4] *James v. Vineville Christian Towers*, 256 Ga. App. 72, 75 (567 SE2d 712) (2002) (footnotes

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 10, 2006.

*Magruder & Sumner, J. Clinton Sumner, Jr., Stephen P. Wood-ard,* for appellants.

*Cunningham & Mullinax, Billy E. Mullinax, Clifton M. Patty, Jr.,* for appellee.

---

omitted) (defendant apartment complex not liable for injuries to plaintiff who stepped into a hole, where hole was obscured even after grass had been freshly cut and where numerous other people had walked in the area without incident).