**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 28, 2019**

# In the Court of Appeals of Georgia

A19A1321. HANDBERRY et al. v. MANNING FORESTRY SERVICES, LLC.

DILLARD, Presiding Judge.

When William Handberry, Sr. died after falling into an open well, Marie Handberry—as surviving spouse and executor of his estate—brought this negligence action against several defendants. Marie's claims are premised on alleged violations of OCGA § 44-1-14, which, in relevant part, requires "any person" to report "an open abandoned well or hole" located on "public or private property" to "the governing authority of the county in which the hazard exists." Marie now appeals from the trial court's grant of summary judgment to Manning Forestry Services, LLC. Specifically, she argues that the trial court erred when it ruled that (1) OCGA § 44-1-14 may not form the basis of a negligence-per-se claim; and (2) regardless, there is no evidence

Manning knew of the well before William's death. But because the evidence is insufficient as a matter of law to show that Manning had prior, *actual* knowledge of the well in which William died, Marie cannot establish that Manning violated OCGA § 44-1-14. We therefore affirm the judgment of the trial court.

Viewing the evidence in the light most favorable to Marie (*i.e.*, the nonmoving party),[1] the record shows that, on July 25, 2015, William drove a four-wheeler onto property known as the "McCroan Tract."[2] When one of the vehicle's wheels entered a well that was hidden from view by vegetation, the four-wheeler overturned, and William fell into the well, suffering fatal injuries.

On March 31, 2017, Marie sued several defendants that previously performed work on the property (including Manning), alleging that they were negligent in failing to report the existence of the well to the property owner.[3] Following discovery,

---

[1] *See, e.g.*, *City of St. Marys v. Reed*, 346 Ga. App. 508, 508 (816 SE2d 471) (2018).

[2] It appears undisputed that William had the owner's permission to be on the property.

[3] All of the defendants—other than Manning—have since been dismissed from the action. Marie also sued the property owner in a separate proceeding. Last year, we affirmed the trial court's order granting the property owner's partial motion to dismiss for failure to state a claim. *See Handberry v. Stuckey Timberland, Inc.*, 345 Ga. App. 191 (812 SE2d 547) (2018).

Manning moved for summary judgment on grounds that, as relevant to this appeal, (1) a tort action may not lie for violating OCGA § 44-1-14; and (2) regardless, Marie presented no evidence that Manning—which planted trees on the property—had actual knowledge of the well before William's death or otherwise breached a duty it owed to him. In her opposition to Manning's motion for summary judgment, Marie maintained that a violation of OCGA § 44-1-14 may establish negligence per se and that circumstantial evidence—which we address in detail *infra*—is sufficient to create a jury question as to Manning's prior knowledge of the well. The trial court granted Manning's motion for summary judgment, concluding that (1) OCGA § 44-1-14 neither forms a basis for a claim of negligence per se nor gives rise to a private right of action; and (2) alternatively, Marie's circumstantial evidence of Manning's purported knowledge of the well is insufficient as a matter of law. This appeal follows.

This Court reviews *de novo* a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant.[4] Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter

---

[4] *City of St. Marys*, 346 Ga. App. at 508.

3

of law.[5] A defendant seeking summary judgment may discharge its burden in this regard "by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case."[6] And if the movant meets this burden, the nonmovant "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue."[7] In that vein, speculation which "raises merely a conjecture or possibility is not sufficient to create even an inference of fact for

---

[5] OCGA § 9-11-56 (c); *City of St. Marys*, 346 Ga. App. at 508.

[6] *McQuaig v. Tarrant*, 269 Ga. App. 236, 237 (603 SE2d 751) (2004) (punctuation omitted); *see* OCGA § 9-11-56 (c) (providing that summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact"); *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 819 (3) (a) (670 SE2d 469) (2008) (noting that a party seeking summary judgment may meet its burden by "pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case" (punctuation omitted)).

[7] *Ellison*, 294 Ga. App. at 819 (3) (a) (punctuation omitted); *see* OCGA § 9-11-56 (e) (providing that the opposing party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits" or otherwise, "must set forth specific facts showing that there is a genuine issue for trial" to avoid judgment against him).

consideration on summary judgment."[8] Moreover, at the summary-judgment stage, we do not "resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution."[9] But if there is insufficient evidence to create a genuine issue as to any essential element of a plaintiff's claim, "that claim tumbles like a house of cards,"[10] and all other factual disputes are rendered immaterial.[11] With these guiding principles in mind, we turn to Marie's claims on appeal.

1. Marie contends that the trial court erred in concluding that no genuine issue of material fact exists as to whether Manning had actual knowledge of the existence of the well before William's death. Specifically, she maintains that an otherwise straight line of trees planted by Manning before William's death changes course at the well's location, showing that Manning knew of the well's existence. We disagree.

---

[8] *Ellison*, 294 Ga. App. at 819 (3) (a) (punctuation omitted); *accord Hunsucker v. Belford*, 304 Ga. App. 200, 202 (1) (695 SE2d 405) (2010).

[9] *Tookes v. Murray*, 297 Ga. App. 765, 766 (678 SE2d 209) (2009).

[10] *Patterson v. Kevon, LLC*, 304 Ga. 232, 235 (818 SE2d 575) (2018) (punctuation omitted); *accord Dyess v. Brewton*, 284 Ga. 583, 586 (3) (669 SE2d 145) (2008); *McQuaig*, 269 Ga. App. at 237.

[11] *Patterson*, 304 Ga. at 235; *Dyess*, 284 Ga. at 586 (3); *McQuaig*, 269 Ga. App. at 237.

To state a cause of action for negligence in Georgia, a plaintiff must show "the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages."[12] Importantly, negligence is not to be presumed, but is "a matter for affirmative proof."[13] And in the absence of affirmative proof of negligence, we must "presume performance of duty and freedom from negligence."[14]

---

[12] *Wilcher v. Redding Swainsboro Ford Lincoln Mercury, Inc.*, 321 Ga. App. 563, 565-66 (1) (743 SE2d 27) (2013) (punctuation omitted); *see Goldstein, Garber & Salama, LLC v. J. B.*, 300 Ga. 840, 841 (1) (797 SE2d 87) (2017) ("[T]o recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." (punctuation omitted)); *Hunsucker*, 304 Ga. App. at 201 (1) ("To state a cause of action for negligence in Georgia, a plaintiff must show (1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage to plaintiff's legally protected interest resulting from the breach." (punctuation omitted)); *McQuaig*, 269 Ga. App. at 237 (same).

[13] *Hunsucker*, 304 Ga. App. at 202 (1) (punctuation omitted); *accord Smith v. Found*, 343 Ga. App. 816, 818-19 (1) (a) (806 SE2d 287) (2017); *Kelly v. Fann*, 343 Ga. App. 351, 353 (807 SE2d 98) (2017); *see Moore v. Macon Coca-Cola Bottling Co.*, 180 Ga. 335, 343 (178 SE 711) (1935) (explaining that a trial court "should not charge the jury that there would be an inference of negligence from a given state of facts, but should instruct them in clear and unequivocal terms that negligence must be proved" (punctuation omitted)).

[14] *Hunsucker*, 304 Ga. App. at 202 (1) (punctuation omitted); *accord Smith*, 343 Ga. App. at 819 (1) (a); *Kelly*, 343 Ga. App. at 353.

The elements of a negligence claim primarily at issue are a duty and a breach of that duty, which Marie seeks to establish—under a theory of negligence per se[15]—by showing a violation of OCGA § 44-1-14. This statute provides, in relevant part, that "[w]henever it is brought to the attention of any person that an open abandoned well or hole . . . exists on public or private property, such person shall immediately inform the governing authority of the county in which the hazard

---

[15] To Marie's credit, she rightly acknowledged during oral argument that OCGA § 44-1-14 does not expressly provide her with a private right of action, and she has not asserted a claim to that effect in this action. *See, e.g.*, *Somerville v. White*, 337 Ga. App. 414, 417 (1) (787 SE2d 350) (2016) (highlighting the "longstanding precedential authority rejecting the creation of implied private rights of action" in Georgia). Instead, she proceeds under a theory of negligence per se, which, as a general matter, "arises when a statute is violated, the person injured by the violation is within the class of persons the statute was intended to protect, and the harm complained of was the harm the statute was intended to guard against." *Goldstein, Garber & Salama, LLC*, 300 Ga. at 845 (2) (punctuation omitted); *see Nash v. Reed*, 349 Ga. App. 381, 385 (3) (825 SE2d 853) (2019) ("Under Georgia law, a statute may establish a duty, and violating that statute may result in a breach of the duty, constituting negligence per se."); *accord McLain v. Mariner Health Care, Inc.*, 279 Ga. App. 410, 411 (2) (631 SE2d 435) (2006); *see also* OCGA § 51-1-6 ("When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby."); OCGA § 51-1-8 ("Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action."). Here, because we conclude that Marie has not shown Manning violated OCGA § 44-1-14, we need not address whether such a violation, if proved, may establish negligence per se. *See* Division 2, *infra*.

7

exists."[16] The statute further sets forth a procedure by which the governing authority of the county may then correct the hazard.[17] And by the very terms of the statute, the duty to report does not arise unless a person has *actual* knowledge—*i.e.*, "[w]henever it is *brought to the attention of* any person"—of the existence of an "open abandoned well or hole."[18]

Here, the record shows that, in June 2010, Manning began preparation for planting pine trees in the section of the McCroan Tract in which William later died,

---

[16] OCGA § 44-1-14 (b); *see Sisson v. Elliott*, 278 Ga. App. 156, 158 (1) (628 SE2d 232) (2006) ("The statute is activated whenever it is brought to the attention of any person that an open abandoned well or hole exists on public or private property; it then becomes the duty of such person to immediately inform the governing authority of the county in which the hazard exists."). The statute defines "abandoned well or hole," in relevant part, as "any manmade opening upon the surface of the earth which is ten feet or more in depth and which has not been used for a period of 60 days." OCGA § 44-1-14 (a).

[17] OCGA § 44-1-1 (b); *see Sisson*, 278 Ga. App. at 158 (1) ("OCGA § 44-1-14 (b) authorizes the governing authority of a county to abate the hazard created by any open abandoned well or hole located on public or private property either by covering, filling, or otherwise." (punctuation omitted)).

[18] *See* OCGA § 44-1-14 (b) (providing that the duty to report arises only after the existence of the "open abandoned well or hole" "*is brought to the attention of*" a person (emphasis supplied)); *Sisson*, 278 Ga. App. at 157, 158 (1) (holding that no duty to report a well arose when the defendant property owners did not build it, they were told by the former owner that it had been filled, and nothing on the ground gave any indication that an open well existed just below the surface until the plaintiff accidentally stepped through the ground covering and fell into the well).

8

and planting began the following November. Manning did not do any work on the property after planting was completed in 2010. Manning typically plants pine trees six feet apart in straight rows if the land is flat; the goal is to make each row as long as possible. If the land is hilly, trees are planted along the contours of the land. And obstacles such as a large rock, a stump, a hole in the ground, or a large puddle or swampy area are other common causes of deviations from straight lines. Rows of trees typically are spaced 12 feet apart.

Manning plants trees by using two-person teams: one person drives a bulldozer, which pulls a tree planter in which the other person rides and which carries the seedlings to be planted. Robert Wells—Manning's crew leader and sole full-time employee at the time—conducted the preparation work and drove a bulldozer used to plant pine trees in the McCroan Tract. Three seasonal workers from Mexico assisted Wells with the planting—one drove a second bulldozer, and the other two rode in the planters.[19] During the planting, one 12-foot row typically separated each bulldozer, so that the teams were operating on rows 24 feet away from each other.

---

[19] In his 2017 deposition, Wells testified that he did not know how to get in touch with any of the seasonal workers, who typically returned to Mexico after planting was completed.

Manning's owner, Gene Manning, testified in a deposition that—although he delivered seedlings and equipment to the McCroan Tract—he did not do any of the preparation work or planting, inspect the property, or otherwise have an opportunity to observe any holes in the ground. And to his knowledge, no wells were found on the McCroan Tract while Manning planted trees. Gene also testified that if an employee encounters a well while working on property, the employee is expected to inform the landowner and mark the area with stakes. Wells similarly testified that—although he could not recall anything that prevented planting trees in a straight row on the McCroan Tract in 2010—he "flag[ged]" every well he found while working for Manning, and the only reason he would not "flag" a well is if he did not see it. Indeed, Wells did not recall seeing a well on the McCroan Tract, and he testified that he would know if one had been found during Manning's work on the property. Wells also noted that—during the time he worked on the McCroan Tract—the ground was "real wet," "boggy," "rough," and "stumpy," and the bulldozer "got stuck a lot" due to the wet ground.

Previously, in 2008, Hawkins Logging harvested timber in the McCroan Tract on behalf of Georgia-Pacific. And a Georgia-Pacific representative testified in a 2017 deposition that its personnel involved in the 2008 harvest were not aware of any wells

on the property. As is the case with Manning, if Georgia-Pacific personnel encounter a well while working on property, they are expected to inform the landowner and "flag[]" the area.

Manning relies on the foregoing evidence to show that it did not know of the well's existence on the McCroan Tract before William's death. Nevertheless, Marie sought to call this proposition into question by presenting the affidavit of her forestry expert, Alex Nixon. Nixon inspected the area around the well several times beginning in August 2015, by which time the well had been "covered by a mound of dirt several feet high." According to Nixon, the pine trees in that area generally were planted in straight rows parallel to a road. But immediately before the well's location, one of the rows changed direction, as a result of which three trees were on a 45-degree angle from the rest of the row. Nixon attested that "[t]he row then picks up on the opposite side of the well."

Based on these observations, Nixon opined that "as the bulldozer and tree planter approached the well, the operator must have seen the well opening[ ] and abruptly changed course by 45 degrees to avoid the well." According to Nixon, "[o]nce the bulldozer drove around the well and repositioned on the opposite side, the row was continued, starting about 10 feet beyond the well." Nixon further attested

11

that he saw no obstacles—other than the (now-covered) well—large enough to have caused the diversion. As a result, it was Nixon's opinion that, when Manning planted the trees, "the well was open, and the bulldozer operator saw the well and intentionally avoided it by changing the course of the row that was headed directly toward the well" because avoidance of the open well was the "only explanation" for the pattern of trees.

Nixon's opinion that Manning personnel saw an open well while planting trees in 2010 at the location where William died relies entirely on two observations: (1) an otherwise straight tree line deviated 45 degrees around the "mound of dirt" that stood at the well's location on the dates of Nixon's inspections (the first of which occurred *in 2015*); and (2) no other obstacles that were present on *those dates* were large enough to have caused the diversion. But even accepting both of those observations as true, they constitute only circumstantial evidence that Manning personnel saw an open well while planting trees in 2010, because they are consistent both with Nixon's hypothesis and any number of alternative hypotheses under which the planters did not see an open well.[20] For example, given Nixon's observation that "a mound of dirt

_____

[20] *See Southern R. Co. v. Ga. Kraft Co.*, 258 Ga. 232, 232 (367 SE2d 539) (1988) ("Circumstantial evidence can be described as evidence which does not constitute direct proof with regard to the issue of fact or the hypothesis sought to be

12

several feet high" stood in place of the well in 2015, it is equally possible that (a) planters deviated from a straight line at the well's location in 2010 because the ground at that time similarly rose—or appeared to do so due to structures associated with the well or other obstacles—at that spot, or (b) the ground structure near the well gave the appearance of a tree stump, one or more rocks, and/or a "boggy" surface.[21]

Generally, the question as to the sufficiency of the circumstantial evidence, and its consistency or inconsistency with alternative hypotheses, is "a question for the jury."[22] Nevertheless, before a plaintiff in a civil case can have a verdict in his favor supported solely by circumstantial evidence, such evidence "must be such as to reasonably establish the theory relied upon, *and to preponderate to that theory rather*

---

proven by the evidence; rather, circumstantial evidence constitutes proof of other facts consistent with the hypothesis claimed."); *accord Patterson*, 304 Ga. at 236; *see also McCray v. State*, 301 Ga. 241, 244 (1) (799 SE2d 206) (2017) ("Direct evidence is that which is consistent with *either* the proposed conclusion *or* its opposite; circumstantial evidence is that which is consistent with *both* the proposed conclusion *and* its opposite." (punctuation omitted)); *Stubbs v. State*, 265 Ga. 883, 885 (2) (463 SE2d 686) (1995) (same).

[21] While these alternative hypotheses may be no more than pure speculation, they highlight the circumstantial—and equally speculative—nature of Nixon's (and thus Marie's) hypothesis. *See generally* notes 26, 30, 33, 36, *infra*.

[22] *Southern R. Co.*, 258 Ga. at 232; *accord Patterson*, 304 Ga. at 236; *Callaway v. Quinn*, 347 Ga. App. 325, 327 (1) (819 SE2d 493) (2018).

*than to any other reasonable hypothesis.*"[23] Put another way, circumstantial evidence

is insufficient to give rise to a genuine issue of material fact unless either (a) it is

inconsistent with direct evidence on that issue, or (b) if consistent with the direct

evidence, it demands a finding of fact on that issue in favor of its proponent.[24] Thus,

circumstantial evidence may be sufficient for a plaintiff's claim to survive summary

judgment, if "other theories are shown to be *less probable*," even if those other

theories are not conclusively excluded.[25] Consequently,

---

[23] *Southern R. Co.*, 258 Ga. at 232-33 (emphasis supplied) (punctuation omitted); *accord Miscally v. Colonial Stores, Inc.*, 68 Ga. App. 729, 731 (23 SE2d 860) (1943); *see Fussell v. Atl. Coast Line R. Co.*, 77 Ga. App. 302, 308 (48 SE2d 556) (1948) (holding that the plaintiff's circumstantial evidence preponderated in support of the theory that the defendant's locomotive or train was the cause of a fire that burned the plaintiff's house, and reversing the grant of a nonsuit—a remedy analogous to a directed verdict—to the defendant on that basis).

[24] *See Haley v. Regions Bank*, 277 Ga. 85, 88-89 (1) (586 SE2d 633) (2003) (explaining that, to contradict "direct and positive" evidence on an issue, circumstantial evidence must "must be inconsistent with" the evidence to be rebutted, "or if consistent, it must demand a finding of fact on the issue in favor of" its proponent (punctuation omitted)); *905 Bernina Ave. Coop., Inc. v. Smith/Burns LLC*, 342 Ga. App. 358, 367-68 (2) (802 SE2d 373) (2017) (same); *DeMarco v. Ga. Dep't of Transp.*, 320 Ga. App. 324, 326 (739 SE2d 779) (2013) (same).

[25] *Patterson*, 304 Ga. at 236; *see Allen Kane's Major Dodge, Inc. v. Barnes*, 243 Ga. 776, 780-81 (257 SE2d 186) (1979) (noting that a party on whom a burden of proof rests may meet that burden with circumstantial evidence only if such evidence "tend[s] in some proximate degree to establish the conclusion he claims" and "also render[s] less probable all inconsistent conclusions" (punctuation omitted)).

14

before circumstantial evidence can have any probative value to rebut or contradict direct and positive testimony of an unimpeached witness of the alleged facts in question, such evidence must point at least more strongly to a conclusion opposite to the direct testimony. It is not sufficient that such circumstantial evidence points equally one way or the other.[26]

Here, all of the direct record evidence of *actual* knowledge supports only one conclusion—*i.e.*, that Manning had no knowledge of the well's existence before William's death. In particular, Manning's owner and crew chief both testified that no wells were found during their work on the property (during which time the crew chief

---

[26] *Callaway*, 347 Ga. App. at 328 (1) (punctuation omitted) (holding that circumstantial evidence pointed more strongly to the conclusion that the defendant was one of the drivers in a hit-and-run accident than to the defendant's testimony to the contrary, as a result of which its sufficiency was a question for the jury); *see Ladson Motor Co. v. Croft*, 212 Ga. 275, 277 (92 SE2d 103) (1956) ("Facts which are consistent with either of two opposing theories prove nothing."); *Rosales v. Davis*, 260 Ga. App. 709, 712 (2) (580 SE2d 662) (2003) (explaining that circumstantial evidence that does not point more strongly to a conclusion opposite to direct testimony "amounts to mere speculation, conjecture, or possibility insufficient to preclude summary judgment"). *See generally Hunsucker*, 304 Ga. App. at 202-03 (1) ("[G]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment. A plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough." (punctuation omitted)); *McQuaig*, 269 Ga. App. at 238 (same).

15

typically was only two twelve-foot rows away from the only other bulldozer performing such work), and that any such well would have been flagged. The crew chief also added that, given his position, he would know if a well had been found. And that evidence is squarely corroborated by the Georgia-Pacific representative's testimony that no wells were found on the property during a timber harvest two years earlier.

Marie's circumstantial evidence to the contrary, then, is insufficient because it does not "point . . . more strongly" to a conclusion that Manning personnel actually knew of the well's existence—*i.e.*, subjectively recognized that whatever caused the tree-line deviation was, in fact, an open, abandoned well—or establish that it is "less probable" that Manning did not know of the well's existence.[27] In particular, Nixon's observation that, as of the dates of his inspections, the mound of dirt covering the well was the only obstacle present that would have caused the tree-line deviation gives rise only to a speculative inference that no other such obstacles existed when Manning was there *more than four and one-half years earlier*.[28] Importantly, given

---

[27] *See Patterson*, 304 Ga. at 236 (punctuation omitted); *accord Callaway*, 347 Ga. App. at 328 (1).

[28] *See generally Bailey v. TitleMax of Ga., Inc.*, 776 F3d 797, 803 (III) (C) (11th Cir. 2015) ("[T]he absence of evidence is not necessarily evidence of

16

the several-foot-high mound of dirt covering the well during Nixon's multiple inspections (the first of which occurred in August 2015), the well's location necessarily had a different appearance at those times than when Manning was planting in the area—and, for that matter, when William died. It therefore would be pure speculation for Nixon or a jury to determine that, when Manning was planting in the area, (1) the well was open and plainly visible; (2) it obviously looked like a well; and (3) Manning personnel subjectively recognized it as an open and abandoned well.[29] Evidence to the effect that Manning and Georgia-Pacific personnel saw no wells points more strongly in the opposite direction, as does the critical fact that William also appears not to have recognized the well as an open well until it was tragically too late to avoid driving over it.

---

absence."); *United States v. Acosta-Gallardo*, 656 F3d 1109, 1117 (II) (2) (10th Cir. 2011) (same); *accord Examination Mgmt. Servs., Inc. v. Steed*, 340 Ga. App. 51, 54-55 (1) (794 SE2d 678) (2016) (holding that the fact that police did not find a gun in the plaintiff's possession gave rise only to a speculative inference—which was without evidentiary value—that a witness had lied when she told police that she saw the plaintiff holding a gun).

[29] *See* OCGA § 44-1-14 (b) (the duty to report is triggered by knowledge of "an *open* abandoned well or hole" (emphasis supplied)); *Sisson*, 278 Ga. App. at 158 (1) ("Because the abandoned well or hole on the [defendants'] property did not become an 'open' abandoned well or hole until after [the plaintiff] stepped into it, the [defendants] did not violate OCGA § 44-1-14.").

And where, as here, an inference is founded on speculation,

> it is without evidentiary value. . . . [I]nferences must be based on probabilities rather than mere possibilities. [Thus], when a party relies on inferences to prove a point, not only must those inferences be factually based, they must tend in some proximate degree to establish the conclusion sought and render less probable all inconsistent conclusions.[30]

That said, as Marie correctly points out, the probative value of circumstantial evidence and the permissible inferences to be drawn from it generally are questions for the jury.[31] Nevertheless, however willing we are to commit to the jury "the

---

[30] *Examination Mgmt. Servs., Inc.*, 340 Ga. App. at 54-55 (1) (punctuation omitted) (reversing the denial of summary judgment on the plaintiff's defamation claim because he offered only speculation that the defendant acted with malice); *see Allen Kane's Major Dodge, Inc.*, 243 Ga. at 781 ("In cases of circumstantial evidence a mere inconclusive inference, or, as the English courts express it, a mere scintilla, is not to be regarded as any evidence, so as to require the submission of its sufficiency to the jury." (punctuation omitted)); *Politzer v. Xiaoyan*, 342 Ga. App. 224, 227 (2) (801 SE2d 114) (2017) ("[A]n inference cannot be based on evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." (punctuation omitted)); *Williams v. Booker*, 310 Ga. App. 209, 213 (1) (b) (712 SE2d 617) (2011) (observing that a conclusion that is equally as likely as its opposite "is speculation rather than a reasonable inference from the facts").

[31] *See Patterson*, 304 Ga. at 236 (explaining that questions regarding the sufficiency of circumstantial evidence and "its consistency or inconsistency with alternative hypotheses" generally are for the fact-finder); *Southern R. Co.*, 258 Ga. at 232 (same); *Callaway*, 347 Ga. App. at 327 (1) (same).

solution of every question of fact, yet in the very nature of things, when the determination of the issue rests not on direct proof, but on circumstances, there exists a point where the inferences to be drawn can not, as a matter of law, be sufficient to defeat the grant of summary judgment."[32] This is such a case.

Furthermore, Marie's presentation of her theory by way of an expert opinion does not change this result when the opinion as to actual knowledge is wholly speculative.[33] Notably, Nixon's opinion consists of two separate conclusions: first, that *something* at the site of the well caused the tree-line deviation, and second, that Manning personnel subjectively recognized that *something* as an open, abandoned well. The former is largely objective and uncontroversial. But the latter is wholly

---

[32] *Chorey, Taylor & Feil, P. C. v. Clark*, 273 Ga. 143, 145 (539 SE2d 139) (2000) (punctuation omitted); *see Allen Kane's Major Dodge, Inc.*, 243 Ga. at 779 (explaining that "there exists a point where the inferences to be drawn" from circumstantial evidence "can not, as a matter of law, be sufficient to support a verdict" (punctuation omitted)); *Ken Thomas of Ga., Inc. v. Halim*, 266 Ga. App. 570, 575 (597 SE2d 615) (2004) (same).

[33] *See Swint v. Mae*, 340 Ga. App. 480, 485 (2) (798 SE2d 23) (2017) ("When the basis of an expert's opinion is given and it appears that it is wholly speculative or conjectural, it must follow that his opinion is without foundation and has no probative value. Speculation and conjecture by an expert is still speculation and conjecture, and will not support a verdict." (emphasis & punctuation omitted)); *Hawkins v. OB-GYN Assocs., P. A.*, 290 Ga. App. 892, 895 (2) (b) (660 SE2d 835) (2008) (same); *Bankers Health & Life Ins. Co. v. Fryhofer*, 114 Ga. App. 107, 111 (1) (150 SE2d 365) (1966) (same).

speculative because, by his own admission, Nixon had no opportunity to observe what the well's location looked like at the time of the tree-line deviation four and one-half years earlier. Thus, Nixon has no basis for offering an opinion as to what Manning personnel believed they saw, or did not see, at that location. It is undisputed, then, that the appearance of the site of the well—which itself was no longer visible, but was covered by several feet of dirt—had changed in a material way before Nixon inspected it.[34] The very basis of Nixon's opinion that Manning personnel subjectively recognized as an open, abandoned well *something*—which Nixon never saw—that caused a tree-line deviation at the site of the well is wholly speculative.[35] As a result,

---

[34] In fact, when asked during a deposition whether he could offer an opinion as to the age and type of the well, Nixon testified, "The whole thing's been speculation because there was a mound of dirt on top of it."

[35] *See Drawdy v. Dep't of Transp.*, 228 Ga. App. 338, 341 (491 SE2d 521) (1997) (physical precedent only) ("An expert cannot render an opinion of evidentiary value without personal knowledge of the facts or evidence of facts in the record to support a hypothetical question; otherwise, his opinion is pure speculation."); *Loper v. Drury*, 211 Ga. App. 478, 481 (1) (b) (440 SE2d 32) (1993) (physical precedent only) (explaining that an expert can give an opinion based upon facts that he personally observes but generally "cannot state his opinion based upon facts not within his personal knowledge which are not otherwise admitted in evidence" (punctuation omitted)); *see also DeMarco*, 320 Ga. App. at 324, 326-27 (concluding that two experts' opinions that a road was negligently designed and maintained in a way that did not allow rainwater to safely drain from its surface was insufficient to overcome direct evidence that no standing water was present at the time of an accident, where neither expert had knowledge of the amount of water on the road at

20

a jury likewise could only impermissibly speculate (a) as to what the well looked like at that time, and (b) that Manning personnel recognized what they saw as an open, abandoned well.[36]

---

that time); *Kinsey v. Scott*, 124 Ill. App. 3d 329, 340 (463 NE2d 1359) (1984) ("An expert witness may not base his opinion upon conjecture, speculation, or a guess."); *Mondie v. Commonwealth*, 158 SW3d 203, 213 (III) (B) (Ky. 2005) ("[E]xpert opinion based on speculation rather than reasoned analysis and judgment is of no assistance to triers of fact." (punctuation omitted)); *State, Use of Stickley v. Critzer*, 230 Md. 286, 290 (186 A2d 586) (1962) ("[N]o matter how highly qualified the expert may be in his field, his opinion has no probative force unless a sufficient basis to support a rational conclusion is shown."); *Gerster v. Special Adm'r for Estate of Wedin*, 294 Minn. 155, 160 (199 NW2d 633) (1972) ("[T]he opinion of an expert must be based on facts sufficient to form an adequate foundation for his opinion[,] and . . . an opinion based on speculation and conjecture has no evidentiary value."); *City of Phila. v. Workers' Comp. App. Bd. (Kriebel)*, 612 Pa. 6, 18, 21 (29 A3d 762) (2011) (observing that the basis of an expert's opinion "cannot be deduced or inferred from the conclusion itself" because "the opinion of the expert does not constitute proof of the existence of the facts necessary to support the opinion," and holding that the expert opinion at issue constituted "nothing but conjecture and speculation" because it lacked "an adequate factual foundation").

[36] *See Ladson Motor Co.*, 212 Ga. at 277 ("[When] evidence is not more than a scintilla, if it is dependent entirely upon guess or speculation, it is insufficient to support a verdict."); *Bankers Health & Life Ins. Co.*, 114 Ga. App. at 111 (1) (same); *see also Ken Thomas of Ga., Inc.*, 266 Ga. App. at 574 ("If the circumstantial evidence raises only a mere conjecture as to the conclusion sought, there can be no recovery."); *Jiffy Store, Inc. v. Bishop*, 190 Ga. App. 716, 717 (379 SE2d 602) (1989) (holding that "evidence of 'something' on plaintiff's shoe" the morning after he fell in defendant's store neither "support[ed] the conclusion that it was on the floor where he fell and that defendant's employee was aware of its presence prior to that fall" nor "render[ed] less probable all inconsistent conclusions").

21

Although Marie acknowledges that Manning's owner and crew chief both testified that they had no prior knowledge of the well, she nevertheless faults Manning for failing to present testimony from every employee who participated in the tree planting or positively identifying an alternative cause of the tree-line deviation. But the problem with the inference Marie asks us to make is that she bears the burden of proof on each element of her negligence claim.[37] And in stark contrast, *Manning*'s burden on summary judgment is merely to highlight the absence of evidence on any such element[38]—a burden it exceeded by identifying unimpeached testimony disclaiming its prior knowledge of the well and directly refuting the duty and breach

---

[37] *See Wolfe v. Carter*, 314 Ga. App. 854, 856 (1) (726 SE2d 122) (2012) (observing that a plaintiff has "the burden of proof to establish each element of his negligence claim"); *Denson Heating & Air Conditioning Co. v. Oglesby*, 266 Ga. App. 147, 148 (596 SE2d 685) (2004) (explaining that the plaintiff bears the burden of proof on all "issues essential to the cause of action for negligence" (punctuation omitted)); *see also Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565, 566 (713 SE2d 835) (2011) ("[T]o have a viable negligence action, a *plaintiff must satisfy* the elements of the tort . . . .") (emphasis supplied).

[38] *See Patterson*, 304 Ga. at 235 ("A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case." (punctuation omitted)); *Politzer*, 342 Ga. App. at 225 (same); *DeMarco*, 320 Ga. App. at 325 ("To prevail on a motion for summary judgment, a defendant "must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim." (punctuation omitted)).

elements of Marie's negligence claim.[39] As a result, Marie was required to point to specific evidence—*i.e.*, "affirmative proof," rather than mere speculation—giving rise to a triable issue on these elements to defeat summary judgment.[40] This, she failed to do. Moreover, by highlighting evidence that *Manning* "failed" to present, Marie essentially asks us to speculate as to what such unpresented evidence would show. This, we cannot do.[41]

---

[39] *See* OCGA § 9-11-56 (c) (providing that summary judgment must be granted if the movant establishes, by reference to the record, "that there is no genuine issue as to any material fact"); *Wilcher*, 321 Ga. App. at 565 (1) (observing that the elements of a claim for negligence include "the existence of a legal duty" and "breach of that duty" (punctuation omitted)); *McQuaig*, 269 Ga. App. at 237 (noting that a defendant meets its burden on summary judgment by showing that there is insufficient record evidence "to create a jury issue on at least one essential element of plaintiff's case" (punctuation omitted)).

[40] *Hunsucker*, 304 Ga. App. at 202 (1); *see* OCGA § 9-11-56 (e) (providing that a nonmovant "must set forth specific facts showing that there is a genuine issue for trial" to avoid summary judgment); *Patterson*, 304 Ga. at 236 (noting that circumstantial evidence may be sufficient for a plaintiff to survive summary judgment only if other theories are shown to be less probable); *Allen Kane's Major Dodge, Inc.*, 243 Ga. at 780-81 (explaining that a party may avoid summary judgment with circumstantial evidence only if it "render[s] less probable all inconsistent conclusions" (punctuation omitted)); *Ellison*, 294 Ga. App. at 819 (3) (a) (observing that speculation is insufficient to survive summary judgment, which instead requires "specific evidence giving rise to a triable issue" (punctuation omitted)).

[41] *See In the Interest of H. A.*, 311 Ga. App. 660, 664 (716 SE2d 768) (2011) (observing that this Court may not "speculate about matters that are not part of the record before us"); *see also Tolbert v. Toole*, 296 Ga. 357, 363 (3) (767 SE2d 24)

23

In sum, the trial court properly determined that Marie's circumstantial evidence was insufficient to create a genuine issue of material fact as to Manning's actual knowledge of an open well and correctly granted summary judgment to Manning on that basis.

2. Because we hold that summary judgment was properly granted, we need not address Marie's challenge to the trial court's alternative ruling that a violation of OCGA § 44-1-14 may not establish negligence per se.[42]

For all these reasons, we affirm the trial court's grant of summary judgment to Manning.

*Judgment affirmed. Gobeil and Hodges, JJ., concur.*

---

(2014) ("It is [the appellant]'s burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal."); *Salahuddin v. State*, 277 Ga. 561, 563 (2) (592 SE2d 410) (2004) (declining to "speculate as to what impact, if any," a witness who could no longer be found "might have had" on the appellant's alibi defense); *Ellison*, 294 Ga. App. at 819 (3) (a) ("[S]peculation which raises merely a conjecture or possibility is not sufficient to create even an inference of fact . . . ." (punctuation omitted)).

[42] *See, e.g.*, *N4D, LLC v. Passmore*, 329 Ga. App. 565, 568 (3) (765 SE2d 717) (2014) (declining to address appellant's remaining arguments when grant of summary judgment was appropriate and affirmed on one of many alternative grounds); *Bullington v. Fayette Cty. Sch. Dist.*, 246 Ga. App. 463, 467 (2) (540 SE2d 664) (2000) (declining to address an alternative argument as to the propriety of a summary-judgment ruling because "[a] judgment right for any reason will be affirmed"). *See generally* note 15, *supra*.